PHAN, Appellant,

v.

PRESRITE CORPORATION et al.; Linemaster Switch Corporation, Appellee.

[Cite as *Phan v. Presrite Corp.* (1994), 100 Ohio App.3d 195.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 64821.

Decided March 24, 1994.

*Jeffries, Kube, Forrest & Monteleone Co., L.P.A., Michael R. Kube* and *Richard A. Vadnal,* for appellant.

*Rhoa, Follen & Rawlin Co., L.P.A., James H. Crawford* and *Albert J. Rhoa,* for appellee.

NAHRA, Chief Justice.

Appellant, Quang Phan, was injured when he was operating a power press in the course of his employment with Presrite, Inc. Appellant sued his employer and others, including the manufacturer of the foot switch used to activate the press, Linemaster Switch Corporation. Appellant appeals the trial court's grant of summary judgment in favor of Linemaster Switch, appellee. Claims against all other defendants have been settled and dismissed.

Quang Phan stated in deposition that on December 14, 1989, a part became stuck inside the power press he was operating. Quang attempted to remove the part with his hand, and the press cycled. The most likely cause of the press cycling was that Quang inadvertently stepped on the foot switch. Four of Quang's fingers and a portion of his right hand were amputated.

The foot switch on the press Quang was operating was purchased by Quang's employer from Midland Electric Company. Presrite maintenance personnel and all the experts who were deposed agreed that the foot switch did not malfunction and there was no evidence of a manufacturing defect.

The switch, Linemaster model No. 536–SWH, had a top and side cover surrounding the foot pedal to prevent accidental activation. Linemaster also manufactured foot switches with additional safety features, such as front covers and antitrip devices. Presrite's employees stated on deposition that prior to the accident, they saw catalogues depicting the Linemaster switches with these additional safety features. Prior to Quang's accident, Presrite had purchased a foot switch with a front cover.

Several experts testified that the accident would not have occurred if either a front flap or antitrip device had been in place. Occupational Health and Safety Act ("OSHA") regulations and the Ohio Administrative Code require only that foot switches have top guards. Section 1910.217(b)(7)(x), Title 29, C.F.R.; Ohio Adm.Code 4121:1–5–10(c)(3).

The press Quang operated when he was injured had no point-of-operation guards. Point-of-operation guards prevent the operator from sticking his hands into the point of operation of the press.

An employee of Linemaster Switch, Alfred R. Di Bonaventura, stated on deposition that Linemaster's management knew that an unsafe situation was created by use of foot switches on presses with no point-of-operation guards. Linemaster management knew that some foot switch users did not install point-of-operation guards on their presses.

Linemaster printed a warning on the top of the foot switch in question, in English, French and Spanish. The warning read:

"WARNING

"THIS FOOT SWITCH SHOULD ONLY BE USED WHERE POINT OF OPERATION GUARDING DEVICES HAVE BEEN PROPERLY INSTALLED SO THAT IT IS IMPOSSIBLE FOR THE OPERATOR'S HANDS OR FINGERS TO REMAIN WITHIN THE POINT OF OPERATION DURING THE ACTUAL MACHINE CYCLE."

Quang testified that he never looked at the foot switch, and thus did not see any warning. Kathy Gray, Presrite's safety director, stated in deposition that she was "vaguely aware" of the warning, but did not read it. William Krysiak, an electrician who installed the switches, said he saw the warning but did not read it.

OSHA and the Ohio Administrative Code require use of point-of-operation guards. Section 1910.217(C)(1), Title 29, C.F.R.; Ohio Adm.Code 4121:1–5–10(D)(1). E.W. Bliss Co., the press manufacturer, sent safety information to Presrite in 1975 and 1983, stating that point-of-operation guards must be used. In August 1989, just months before Quang's accident, Presrite was cited by OSHA for lack of point-of-operation guards.

Engineering experts William Wachs and William Eaton stated on deposition that the foot switch in question was safe, if used with proper point-of-operation guards. These experts felt that if the warning had been followed, Quang's accident would not have occurred. Gerald Rennell, a safety engineer, felt that foot switches should not be sold for use with power presses because many users do not install point-of-operation guards.

Dr. Richard Harkness opined that the warning was inadequate because foot switches are never safe when used in conjunction with power presses. Harkness stated that if an interlocked guard (a particular type of point-of-operation guard) had been used on the press, the accident would not have occurred. Harkness felt the warning was inadequate because it failed to specify that interlocked guards

be used, and because an accident could still occur if the operator needed to remove the point-of-operation guards. He also asserted that the warning should appear in catalogues and Linemaster should train its distributors not to sell foot switches without front flaps or antitrip devices for power press applications.

The trial court denied Linemaster Switch Operation's motion for summary judgment. Appellee filed a motion for reconsideration of its motion for summary judgment on October 23, 1992. The motion for reconsideration contained essentially the same facts and arguments as the motion for summary judgment. The journal entry granting summary judgment in favor of appellee was filed on October 30, 1992.

Appellant's sole assignment of error states:

"Whether, in a products liability action, the trial court erred in granting defendant Linemaster Switch Corp.'s motion for reconsideration where the trial court previously denied this defendant's motion for summary judgment and where the deposition and affidavit testimony submitted by plaintiff creates, at the very least, genuine issues of material fact as to the defectiveness of defendant's product."

As a preliminary matter, we note that appellee's statement of the case is not in compliance with App.R. 16(A)(5), and it is stricken.

Next, we will address appellant's assertion that he was denied an opportunity to respond to appellee's motion for reconsideration. Appellant had seven days to respond to the motion for reconsideration in accordance with Loc.R. 11(C) of the Court of Common Pleas of Cuyahoga County, General Division. Additionally, the facts and issues were essentially the same as in the original motion for summary judgment. Therefore, appellant was not prejudiced by the request for reconsideration. *Lawreszuk v. Nationwide Ins. Co.* (1977), 59 Ohio App.2d 111, 13 O.O.3d 165, 392 N.E.2d 1094.

We can now turn to the substantive issues of this case. Appellant asserts there are genuine issues of fact as to whether the foot switch was defective for failing to include safety devices and whether appellee failed in its duty to warn appellant of the dangers of using a foot switch with a power press. There is no evidence that the foot switch by itself was defective. The foot switch did not malfunction and had no manufacturing defects. Plaintiff's expert, Gerald Rennell, stated that there are proper applications for foot switches without front covers and antitrip devices. The only alleged defect with the switch was that it was dangerous to use that particular type of foot switch in conjunction with a power press.

■ The liability of a component manufacturer who did not participate in the assembly of the final product was addressed in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267. *Temple* held that the obligation of a component manufacturer to warn does not extend to the speculative anticipation of how manufactured components, not in and of themselves dangerous or defective, can become potentially dangerous depending upon the nature of their integration into a unit designed and assembled by another. If a manufacturer has knowledge of a specific use of the component and a possible danger from such use, then the manufacturer has a duty to warn. *Runyon v. Briggs & Stratton Corp.* (May 5, 1989), Montgomery App. Nos. 10987 and 11185, unreported, 1989 WL 49475.

■ Here, appellee was aware that its foot switches were being used on power presses with no point-of-operation guards, and that such use created a dangerous situation. Thus, appellee had a duty to warn foot switch users of the dangers of using a foot switch on a power press with no point-of-operation guards. This appellee did.

■ A warning is adequate if it reasonably discloses all inherent risks, and if the product is safe when used as directed. *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 255, 556 N.E.2d 1177, 1180–1181; *Seley v. G.D. Searle & Co.* (1981), 67 Ohio St.2d 192, 21 O.O.3d 121, 423 N.E.2d 831. All of the experts essentially agreed that if the label had been followed and proper point of guard operations had been used, the accident would not have occurred. Thus, the content of the warning was adequate.

Appellant argues that the content of the warning was not adequate because it was unduly delayed, reluctant in tone, or lacking a sense of urgency. See *Seley, supra.* There is no evidence the warning is delayed, reluctant or lacking a sense of urgency.

Appellant also argues that the warning should have instructed against the use of foot switches without front flaps or antitrip devices on power presses. *Temple v. Wean, supra*, rejected this argument. In *Temple*, an employer used buttons to activate a power press. The employer had previously purchased button guards, and knew that such guards would prevent accidental activation. *Temple* held that the button manufacturer had no duty to warn the employer that the button assembly was potentially dangerous without button guards, because the employer already knew this fact. Here, as in *Temple*, Presrite knew of the availability of front flaps and antitrip devices, and knew that these devices would prevent accidental activation.

■ Additionally, appellant has presented no evidence that the alleged inadequacy of the warning was the proximate cause of appellant's injuries. *Seley, supra.* Even if the additional warnings suggested by plaintiff's expert, Dr. Harkness, were given, they would not have prevented the injuries because neither Quang nor any Presrite employee read the warning. *Mitten v. Spartan Wholesalers, Inc.* (Aug. 16, 1989), Summit App. No. CV–85–5–1517, unreported, 1989 WL 95259; see *Freas v. Prater Constr. Corp., Inc.* (1991), 60 Ohio St.3d 6, 573 N.E.2d 27.

■ Appellant argues that the form of the warning was inadequate. Specifically, appellant's expert asserted that a warning should have been printed in the catalogue and Linemaster should have trained its distributors not to sell foot switches without antitrip devices or front flaps for use with power presses. As stated above, the manufacturer need not inform the employer of additional safety devices if the employer is already aware of them. *Temple, supra.* The warning on the foot switch was seen by Presrite employees, so the form of the warning was adequate. Catalogues and distributors were not reasonable ways to inform Quang, the employee. The manufacturer's only reasonable access to the employee was a warning on the foot switch. See *Hargis v. Doe* (1981), 3 Ohio App.3d 36, 38, 3 OBR 38, 40, 443 N.E.2d 1008, 1011.

Thus, appellant has not set forth facts showing that appellee did not fulfill its duty to warn.

"To defeat summary judgment the evidence must be sufficient, considered most favorably to the plaintiff, to allow reasonable minds to infer that defendant did breach his duty, or that there is a genuine dispute over a material fact." *Keister v. Park Centre Lanes* (1981), 3 Ohio App.3d 19, 22–23, 3 OBR 20, 24, 443 N.E.2d 532, 535.[1]

There is no genuine dispute of material fact here, and reasonable minds can only conclude that appellee did not breach its duty to warn. The trial court did not err in granting appellee's motion for summary judgment.

Accordingly, appellant's assignment of error is overruled.

The decision of the trial court is affirmed.

*Judgment affirmed.*

---

1. Although *Keister* dealt with negligence only, the standard for a strict liability claim for inadequate warning is the same as the standard for a negligence claim for inadequate warning. *Crislip, supra,* 52 Ohio St.3d at 257, 556 N.E.2d at 1182–1183.

HARPER, J., concurs.

PATTON, J., dissents.

PATTON, Judge, dissenting.

I respectfully dissent from the majority's disposition of appellant's assignment of error. I would find that the appellant adequately demonstrated the existence of genuine issues of material fact and reasonable minds could reach different conclusions concerning appellant's products liability claims. Consequently, I would reverse the decision of the trial court granting summary judgment in favor of appellee.

In the instant case, the appellant presented the deposition testimony of Alfred Di Bonaventura, an employee of appellee, in opposition to appellee's motion for summary judgment. Therein, it was established that appellee knew its foot switches were being used on power presses without point-of-operation guards. According to Di Bonaventura, use of the foot switches without point-of-operation guards created dangerous conditions for the press operator. In addition, the appellant presented the deposition testimony and affidavit of expert Richard Harkness, Ph.D. Harkness indicated that the use of a foot switch, such as the 536–SWH designed and manufactured by appellee, is one of the leading causes of power press injuries. He further opined that foot switches are never safe when used to activate power presses. This opinion was echoed by the deposition testimony of safety engineer Gerald Renner, who indicated that foot switches should not be sold for use with power presses because many users do not install point-of-operation guards.

Viewing the underlying facts in a light most favorable to the appellant, I would conclude that reasonable minds could reach different conclusions concerning appellant's products liability claims. Consistent with the above, I would reverse the trial court's decision granting summary judgment and remand for further proceedings.