**Matthew A. McCONNELL, et al., Plaintiffs,**

**v.**

**COSCO, INC., et al., Defendants.**

**Case No. C2–00–1001.**

United States District Court, S.D. Ohio, Eastern Division.

Jan. 7, 2003.

Thomas Michael Tyack, Tyack Blackmore & Liston Co LPA, Columbus, OH, for plaintiffs.

John Curtis Albert, Crabbe Brown & James–2, Columbus, OH, for defendants.

### ORDER AND OPINION

KEMP, United States Magistrate Judge.

## I. Introduction

This matter is before the Court on Defendants' Summary Judgment Motion. For the following reasons, Defendants' Summary Judgment Motion is **GRANTED** with respect to Plaintiffs' manufacturing defect claim, Mrs. McConnell's back injury claim, and Plaintiffs' punitive damages claim as to Defendant Penn Traffic Company; Defendants' Summary Judgment Motion is **DENIED** in all other respects.

## II. Facts

Because this matter is before the Court on Defendants' Summary Judgment Motion, the Court views the facts in the light most favorable to Plaintiffs, the nonmoving parties.

The Plaintiffs in this case are Matthew A. McConnell, a minor, his mother Kimberly McConnell, and his father, Michael McConnell. Defendants include Cosco, Inc. ("Cosco"), a manufacturer of high chairs, and Penn Traffic Company doing business as Big Bear/Harts Stores ("Penn Traffic").

On January 3, 1997, the McConnells left their eleven-month-old son Matthew in the care of Lori McClung, their regular babysitter. Ms. McClung cared for children in her own home. On that day, she left Matthew unattended in a Cosco highchair for several minutes while she went upstairs with some of the other children at her home. While she was gone, Matthew attempted to slide out of the highchair. Instead of getting out of the chair, Matthew's neck got caught on the highchair's tray. This position strangled Matthew, cutting off the circulation of blood to his brain. When Ms. McClung returned downstairs she found Matthew suffocating in the highchair. She immediately sought medical attention. Although Matthew survived, the brain damage he sustained was so severe that doctors do not expect him to ever be able to walk or talk. He requires constant medical attention.

Ms. McClung purchased the highchair in which Matthew had been placed from a Harts store near her home. Defendant Penn Traffic owns the Harts store from which she purchased the highchair. Ms. McClung purchased the highchair assembled, without a box or an instruction manual. Defendant Cosco manufactured the highchair, which would normally be sold with its box and instruction manual. Cosco, admits, however, that it was foreseeable that the highchair might sometimes be sold without its box or manual.

Although the highchair Ms. McClung purchased did not include an instruction manual, it did include certain warnings on

the highchair itself. Warnings on the back of the highchair and the bottom of the highchair's tray informed users not to leave children unattended, to strap children into the highchair with the provided straps, and not to rely on the tray to hold children in place. When Ms. McClung left Matthew unattended on January 3, 1997, he was not strapped into the highchair.

Ms. McClung had cared for children in her home since about 1990. Because she did not have a license to operate a day care center, under Ohio Revised Code chapter 5104, she was not permitted to care for more than six children at one time or more than three children under two years of age, not counting her own children over six years of age. When Ms. McClung first started caring for children in her home she was unaware of this law. In response to complaints about Ms. McClung's services, the Ohio Department of Human Services repeatedly informed Ms. McClung about the restrictions on the number of children for whom she could care at one time. Ms. McClung informed state officials that she would reduce the number of children for whom she was caring to comply with the law.

On January 3, 1997, Ms. McClung was caring for ten children, including two of her own. Therefore, Ms. McClung was caring for two more children than permitted under chapter 5104 without a license. Because her two children were over six years of age, they did not count toward the total. After the Matthew McConnell incident at her home, Ms. McClung pleaded guilty to a misdemeanor charge of child endangering, a violation of Ohio Revised Code section 2919.22.

### III. Procedural History

Plaintiffs filed this case on July 20, 2000, in the Court of Common Pleas, Franklin County, Ohio, alleging numerous claims for products liability, including defects in manufacture, design, and warning. Defendants removed the case to this Court on August 30, 2000, asserting diversity of citizenship jurisdiction. Defendants filed their Summary Judgment Motion on May 31, 2002.

### IV. Standard of Review

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

### V. Analysis

Plaintiffs base their products liability claims on theories of both strict liability and negligence. Strict products liability

claims in Ohio are governed by Ohio Revised Code sections 2307.71 through 2307.80. Common-law products liability actions grounded in negligence, such as negligent design and negligent failure to warn claims, survive enactment of the Ohio Products Liability Act. *Carrel v. Allied Prods. Corp.*, 78 Ohio St.3d 284, 677 N.E.2d 795, 798–800 (1997); *Crislip v. TCH Liquidating Co.*, 52 Ohio St.3d 251, 556 N.E.2d 1177, 1181 (1990) ("Plaintiffs may plead both negligence and strict liability for failure to warn.").

To recover compensatory damages under the Ohio products liability statute, Plaintiffs must establish by a preponderance of the evidence that Defendants' highchair was defective in some respect and that the defect was the proximate cause of Plaintiffs' injuries. Ohio Rev. Code Ann. § 2307.73(A) (West Supp. 2002).[1] To prevail on a negligence claim, Plaintiffs must demonstrate the traditional negligence elements of duty, breach, causation, and injury. *See Briney v. Sears, Roebuck & Co.*, 782 F.2d 585, 587 (6th Cir.1986) (applying Ohio law and setting forth the elements of a negligent design claim); *Hanlon v. Lane*, 98 Ohio App.3d 148, 648 N.E.2d 26, 28 (1994) (setting forth the elements of a negligent failure to warn claim).

Defendants seek summary judgment with respect to Plaintiffs' claims that Defendants' highchair was defective in manufacture, defective due to inadequate warning, and defective in design. The Court will consider each of these defects separately. The Court will then consider Defendants' arguments that Penn Traffic, as seller, cannot be liable for Plaintiffs' injuries, that Mrs. McConnell's back injury is too remote for Defendants to be liable for it, that Plaintiffs do not present proper evidence for Matthew McConnell's claim for lost wages, that Plaintiffs cannot recover punitive damages, and that the actions of Ms. McClung were a superseding proximate cause relieving Defendants of liability.

### A. Manufacturing Defect

In their pleading, Plaintiffs alleged that Defendants' highchair was defectively manufactured. Plaintiffs now concede that they have no evidence that the highchair was defectively manufactured. Therefore, Defendants' Summary Judgment Motion with respect to Plaintiffs' defective manufacture claim is **GRANTED.**

### B. Failure to Warn Adequately

■ Defendants argue that their highchair was not defective because an adequate warning accompanied it, and if the warning had been followed, Matthew

---

**1.** Ohio has also adopted Section 402A of the Restatement (Second) of Torts, which sets forth strict liability for torts. *See Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267, 271 (1977); Restatement (Second) of Torts § 402A (1965). A strict products liability claim in Ohio traditionally required proof of the following three elements: "(1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss." *State Auto Mut. Ins. v. Chrysler Corp.*, 36 Ohio St.2d 151, 304 N.E.2d 891, 894–95 (1973); *see also State*

*Farm Fire & Casualty Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 523 N.E.2d 489, 493 (1988); *Temple*, 364 N.E.2d at 270. These are essentially the same elements as those required in Ohio Revised Code section 2307.73, except that the requirement that the defect existed at the time the product left the hands of the defendant is a part of the definitions of what constitutes a defect under the Ohio statute. *See* Ohio Rev.Code Ann. §§ 2307.74 (manufacture defect), 2307.75 (design defect), 2307.76 (warning defect) (West 1994 & Supp. 2002). Defendants do not dispute that the defect in the highchair, if any, existed at the time it left the hands of either of the Defendants.

would not have suffered the injuries he did. To recover compensatory damages for a strict products liability claim based on a warning defect, Plaintiffs must establish that Defendants' highchair was "defective due to inadequate warning or instruction" and that this defect was the proximate cause of Plaintiffs' injuries. Ohio Rev.Code Ann. § 2307.73(A) (West Supp.2002). Similarly, for a negligent failure to warn claim, Plaintiffs "must show that the manufacturer had a duty to warn, that the duty was breached, and that [Plaintiffs'] injur[ies] proximately resulted from that breach of duty." *Hanlon v. Lane,* 98 Ohio App.3d 148, 648 N.E.2d 26, 28 (1994). The Court, therefore, must consider first whether there was a warning defect in Defendants' highchair, and second whether such warning defect proximately caused Plaintiffs' injuries.

### 1. Inadequate Warning Defect

■ Regarding defects due to inadequate warning, Ohio statute provides, in relevant part, as follows:

(A) Subject to divisions (B) and (C) of this section, a product is defective due to inadequate warning or instruction if either of the following applies:

(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type

for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

. . . . .

(B) A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge.

Ohio Rev.Code Ann. § 2307.76 (West 1994). Because this standard for the failure to warn requires that a manufacturer exercise reasonable care, the same standard applies for both strict liability and negligence claims for inadequate warning. *See Crislip v. TCH Liquidating Co.,* 52 Ohio St.3d 251, 556 N.E.2d 1177, 1182–83 (1990).

■ Comment j to section 402A of the Restatement (Second) of Torts provides that "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." A warning is adequate, however, only if "it reasonably discloses all inherent risks, and if the product is safe when used as directed." *Phan v. Presrite Corp.,* 100 Ohio App.3d 195, 653 N.E.2d 708, 711 (1994). The mere fact that there was a warning does not relieve Defendants of liability. Rather, "[a]n inadequate warning may make a product as unreasonably dangerous as no warning at all; there is no reason to preclude a plaintiff from pleading and proving strict liability just because some warning, however inadequate, accompanies a product." *Crislip,* 556 N.E.2d at 1182.

Defendants allege that they adequately warned about the risks associated with the Cosco highchair. They do not claim that they were unaware of the risks, but rather

that the warnings provided were adequate because, had they been followed, Matthew McConnell would not have sustained injury. Plaintiffs argue that the content of the warnings was inadequate and that the warnings were placed on the highchair in unreasonable locations.

The Cosco highchair in question had a warning label on the back of the unit and under the tray. The warning on the back of the highchair was in black letters on a white background and read as follows:

WARNING

Secure child in restraint. Never leave child unattended. Keep child in view while in high chair. The tray is not designed to hold the child in the chair.

The warning under the tray was in raised letters of the same color as the tray and read as follows:

NEVER LEAVE BABY UNATTEND-ED

ALWAYS SECURE BABY WITH SAFETY STRAPS

Although it is true that if Ms. McClung had followed these warnings, Plaintiffs would not have suffered any injury, the Court's inquiry is not limited to that question. Rather, under the Ohio statute and caselaw, the Court must consider whether the warning adequately disclosed all known risks associated with the highchair. *See* Ohio Rev.Code Ann. § 2307.76(A)(1)(a) (West 1994); *see also Phan,* 653 N.E.2d at 711. Neither of these warnings disclose any risks. Rather, they consist of mere instructions. They do not warn that failure to follow the instructions could result in death or serious injury. They do not warn of the risk of strangulation. Therefore, a reasonable jury could conclude that the content of the warnings was inadequate.

Furthermore, a reasonable jury could find that the placement of the warnings made them inadequate. First, the highchair was sold without a users manual, which could have provided a more noticeable warning. In *Phan,* the court found that a warning on the foot switch of a power press was adequate because it was seen by employees who operated the press and because there was no other place to put such a warning where employees would have read it. 653 N.E.2d at 711. In this case, however, Ms. McClung testified in her deposition that she had never seen the warnings on the highchair, or if she had, she never thought anything about them. Regarding the warning on the back of the highchair, Ms. McClung said that she would not have thought to consult the back of the highchair to learn how to use it. Regarding the warning on the bottom of the tray, she admitted that she had never read it because she had no reason to look on the bottom of the tray. Unlike in *Phan,* where the court found that employees did see the warning on the foot switch, there is a question of fact in this case of whether Ms. McClung saw the warnings on the highchair. If she did not see the warnings, a reasonable jury could conclude that the warnings should have somehow been more noticeable.

Defendants also contend that the Cosco highchair did not have a warning defect because Cosco did not have a duty to warn of the open and obvious risks associated with a highchair. Plaintiffs contend, however, that the risk of strangulation was not open and obvious. In reply, Defendants argue that the name of the product itself—"highchair"—implies danger, because the product is a chair that is high and a baby in such a high chair is obviously in danger.

Under Ohio statute, Defendants do not have a duty to warn where the risks of injury are open and obvious or are a matter of common knowledge. Ohio Rev. Code Ann. § 2307.76(B) (West 1994). Likewise, Defendants cannot be liable for negligent failure to warn if the risk is open

and obvious. *Hanlon v. Lane*, 98 Ohio App.3d 148, 648 N.E.2d 26, 29 (1994). Defendants present deposition testimony of the McConnells in which they explain that they made their own straps for use on their highchair that had no straps. Plaintiffs' expert Shelley W. Deppa testified that she, too, made her own straps for use in her own highchair. Based on this testimony, Defendants contend that the risk of strangulation is either open and obvious or a matter of common knowledge.

Although the risk that a baby may climb out of a highchair and fall to the floor may be open and obvious or a matter of common knowledge, there is no evidence that the risk of strangulation was open and obvious or a matter of common knowledge. The fact that Plaintiffs' expert was aware of a risk of strangulation is meaningless, because, as an expert in the field, it cannot be said that everything she knows is a matter of common knowledge.

In *Nadel v. Burger King Corp.*, the court found that the risk that a spilled cup of hot coffee might cause second degree burns was not open and obvious or a matter of common knowledge because of the severity of the burn that the plaintiff sustained. 119 Ohio App.3d 578, 695 N.E.2d 1185, 1191 (1997). The dissent in *Nadel* argued that the severity of injury that may result from a given risk is irrelevant if the risk of danger is open and obvious or one of common knowledge. *Id.* at 1194 (Hildebrandt, J., dissenting). But the case *sub judice* is not one where a person knew of a risk, but underestimated the potential severity of the danger. Rather, a genuine issue of fact exists as to whether the risk of strangulation itself was open and obvious or a matter of common knowledge. Even if Ms. McClung knew or should have known about the risk that a child could fall out of a highchair, one cannot say what she may have done had she known of the risk that Matthew could be strangled on the highchair's tray. If she knew of the risk of a fall, she could calculate that risk and make decisions based on it; but without knowledge of the risk of strangulation, she was unable to make an informed decision about how to use the highchair.

### 2. Inadequate Warning Proximate Causation

■■■ Defendants argue that Ms. McClung admits that she never read the warnings on the highchair, and therefore, the failure to warn adequately is not the proximate cause of Plaintiffs' injuries. Indeed, the inadequacy of a warning cannot be the proximate cause of a plaintiff's injuries if the user of a product failed to read the warnings accompanying the product. Even if such a warning were adequate, it could not prevent the harm if the user did not read the warning. *See Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 451 (6th Cir.2000) (applying Ohio law).

■■■ Ohio law, however, establishes a presumption, based on comment j to section 402A of the Restatement (Second) of Torts, that "an adequate warning, if given, will be read and heeded." *Seley v. G.D. Searle & Co.*, 67 Ohio St.2d 192, 423 N.E.2d 831, 838 (1981). Defendants emphasize that this presumption "works to the benefit of the manufacturer," *id.*, because the manufacturer can assume that the warning will be followed. Defendants, however, ignore the fact that "where an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff, that the failure to adequately warn was a proximate cause of the plaintiff's [use of the product.]" *Id.; see also Hisrich*, 226 F.3d at 451. To establish that the inadequate warnings were not the proximate cause of Plaintiffs' injuries, Defendants must rebut the presumption that Ms. McClung read and heeded the warnings on the highchair. *See Hisrich*, 226 F.3d at 451.

During her deposition, Ms. McClung testified as follows regarding whether she read the warnings on the highchair:

Q. Okay. Did you notice any of the labels on the chair?

A. No. I mean, if I did—you know, a highchair is a highchair. It's self-explanatory.

. . . . .

Q. Okay. On the back of Exhibit 13 there's a label.

A. Right.

Q. Was there a label on the back of the chair that Matthew McConnell was seated in?

A. I don't remember.

Q. Okay. Looking at this label right now, have you ever seen that before?

A. No, not that I can recall.

. . . .

Q. If this is, in fact, the chair Matthew McConnell was in on January 3rd of '97, are you saying that this label was not there?

A. I couldn't say that one way or the other, because I don't sit and look at the back of it.

. . . . .

Q. Have you ever seen [the label on the back of the highchair] before today?

A. No, not that I know of. I mean, it's just—the only thing that I can say is just with you, if you're—if you're looking at something—I mean, I've had kids. . . . I don't need to look at the back of a highchair or look at the back of something to know how it works. So I wouldn't have necessarily looked at that. That's all I'm saying.

. . . . .

Q. Okay. But after reading that warning, would you know what the danger is?

A. No, I wouldn't—I would have never thought this would have happened to a kid, never.

McClung Dep. at 144–46, 247. Based on this testimony, it is not entirely clear whether Ms. McClung ever read the warnings on the highchair. Although she testified that she was unaware of the warning, she also testified that she did not recall whether there was a warning on the back of the highchair at all. A reasonable jury could conclude that Ms. McClung did read the warning on the highchair but she disregarded it because she thought she already knew how to use the highchair properly. A jury could therefore interpret her testimony to support Plaintiffs' contention that Ms. McClung did read the warnings, but failed to heed them because they inadequately warned of the risk of serious bodily harm or strangulation.

Furthermore, Ms. McClung's testimony supports Plaintiffs' alternative position that even if the warnings were adequate in content, they were not adequately displayed on the highchair. If the display of the warnings was inadequate, then Defendants cannot claim that Ms. McClung's failure to read the warnings absolves them of liability. Rather, a warning that is inadequate because it is not properly displayed can be the proximate cause of harm even if the user did not read the warning. *See Town of Bridport v. Sterling Clark Lurton Corp.,* 166 Vt. 304, 693 A.2d 701, 704 (1997) (deciding that the inadequacy of a warning that the plaintiff did not read could be the proximate cause of the plaintiff's injury if the warning was inadequate in its ability "to draw the attention of a reasonably prudent person") (citing *Nowak v. Faberge U.S.A., Inc.,* 812 F.Supp. 492, 498 (M.D.Pa.1992); *Shell Oil Co. v. Gutierrez,* 119 Ariz. 426, 581 P.2d 271, 280–81 (1978); *Johnson v. Johnson Chem. Co.,* 183 A.D.2d 64, 588 N.Y.S.2d 607, 612 (N.Y.App.Div.1992)). Were the law otherwise, manufacturers would be free from liability for providing any warning no matter how obscure, but would be encouraged

to use obscure warnings so that consumers would still use their product despite its risks. Accordingly, Defendants' Summary Judgment Motion with respect to the adequacy of warnings is **DENIED.**

### C. Design Defect

■ To determine whether Defendants are strictly liable for a design defect, the Court must consider whether there was a design defect in the highchair and whether the defect proximately caused Plaintiffs' injuries. Ohio Rev.Code Ann. § 2307.73(A) (West Supp.2002). Similarly, a negligent design defect claim requires proof of three elements: "(1) duty to design against reasonably foreseeable hazards; (2) breach of that duty; and (3) injury which was proximately caused by the breach." *Briney v. Sears, Roebuck & Co.*, 782 F.2d 585, 587 (6th Cir.1986) (applying Ohio law).

Regarding design defects, Ohio statute provides as follows:

(A) Subject to divisions (D), (E), and (F) of this section, a product is defective in design or formulation if either of the following applies:

(1) When it left the control of its manufacturer, the foreseeable risks associated with its design or formulation as determined pursuant to division (B) of this section exceeded the benefits associated with that design or formulation as determined pursuant to division (C) of this section;

(2) It is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

Ohio Rev.Code Ann. § 2307.75(A) (West Supp.2002).

■ Defendants argue that there is no design defect because if a person followed the warnings on the highchair then it would have been safe for use. Defendants once again cite comment j of section 402A of the Restatement (Second) of Torts, which states that "a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." But because a reasonable jury could find that Cosco's warning on the highchair was inadequate, Defendants are not free from liability for a design defect.

There is a genuine issue of material fact under Ohio law regarding whether the foreseeable risks of strangulation exceeded the benefits of the highchair. Ohio statute requires a balancing between the foreseeable risks and the benefits of a product. *See* Ohio Rev.Code Ann. § 2307.75(A)(1). The statute sets forth factors to consider in determining the risks and benefits of a product:

(B) The foreseeable risks associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:

(1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;

(3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer.

(C) The benefits associated with the design or formulation of a product shall be

determined by considering factors including, but not limited to, the following:

(1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;

(2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;

(3) The nature and magnitude of any foreseeable risks associated with such an alternative design or formulation.

Ohio Rev.Code Ann. § 2307.75(B), (C). Plaintiffs have presented evidence that the risks of strangulation associated with Cosco's highchair were foreseeable and that alternative designs were feasible. The deposition testimony of Robert Craig, for example, reveals that Cosco knew that children had been seriously injured in Cosco highchairs. Craig Dep. at 23–38. Furthermore, numerous Cosco officials admit that a passive restraint system would have been technologically feasible in the early 1990s and that Cosco had begun considering such a system for its highchairs by the mid–1990s. Avens Dep. at 19–20; Crag Dep. at 70–71; Emerson Dep. at 109–110; Glover Dep. at 49–50. This evidence creates a genuine issue of fact regarding whether the foreseeable risks of the Cosco highchair exceeded the highchair's benefits. A passive restraint system would not have limited the functionality of the Cosco highchair, while it would have reduced the risk of strangulation. Because an alternative design was technically feasible, a jury must consider whether Cosco should have used such an alternative design to avoid foreseeable risks.

In addition to the issue of fact under the risk-benefit theory of design defect, there is also a genuine issue of material fact under the consumer-expectation standard for a design defect. A product is defective under Ohio law if it is more dangerous than an ordinary consumer would expect. Ohio Rev.Code Ann. § 2307.75(A)(2); *see also State Farm Fire & Casualty Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 523 N.E.2d 489, 494 (1988). Ms. McClung testified in her deposition that she never thought a child could strangle himself in a highchair and suffer the injuries that Matthew has suffered. Given the extent of the injuries Matthew sustained, and the issue of fact regarding the adequacy of the warnings accompanying the Cosco highchair, there is a genuine issue of fact regarding whether the highchair was more dangerous than an ordinary consumer would expect.

A reasonable jury could therefore conclude that Cosco had a duty to design a highchair without the risk of strangulation present in Ms. McClung's highchair. Accordingly, Defendants' Summary Judgment Motion with respect to Plaintiffs' design defect claim is **DENIED**.

### D. Seller's Liability

Defendants argue that summary judgment should be granted with respect to Penn Traffic because they are not liable as a supplier under Ohio law. Plaintiffs contend that because Penn Traffic sold the Cosco highchair without its instruction manual or packaging, Penn Traffic could be liable as a supplier. Ohio statute provides, in relevant part, as follows:

(A) Subject to division (B) of this section, a supplier is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, that either of the following applies:

(1) The supplier in question was negligent and that negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages....

(B) A supplier of a product is subject to liability for compensatory damages based on a product liability claim ... as if it were the manufacturer of that product, if the manufacturer of that product is or would be subject to liability for compensatory damages based on a product liability claim ... and any of the following applies: ...

(6) The supplier in question altered, modified, or failed to maintain that product after it came into the possession of, and before it left the possession of, the supplier in question, and the alteration, modification, or failure to maintain that product rendered it defective....

Ohio Rev.Code Ann. § 2307.78 (West Supp.2002). Defendants do not dispute that Penn Traffic sold the Cosco highchair without its packaging and manual. Rather, they argue that the instruction manual and box did not add additional warnings to those already on the highchair, and because Ms. McClung did not read the warnings on the chair, she would not have read the warnings in the manual. This argument is without merit, however, because one of Plaintiffs' claims is that the warnings on the highchair were inadequate. A reasonable jury could conclude that if a manual had been provided, the warnings would have been adequate.

If a jury were to conclude, however, that the warnings on the highchair were inadequate in *content*, then Penn Traffic could not be liable for failing to provide the manual to Ms. McClung because it contained the same inadequate warning. Only if a jury were to find the warning on the highchair to be adequate in content, but inadequate in its method of display or presentation, could Penn Traffic possibly be liable for failing to include the instruction manual with Ms. McClung's highchair. Because a reasonable jury could find that the lack of an instruction manual made the highchair warnings defective, Defendants' Summary Judgment Motion with respect

to Penn Traffic's liability as seller is **DENIED**.

### E. Mrs. McConnell's Back Injury

One of Plaintiffs' claims is that Mrs. McConnell has suffered back injury because she frequently has been required to lift Matthew and his wheelchair since he was injured. Defendants contend that this back injury is too remote for Defendants to be liable for it.

 "Remoteness is not an independent legal doctrine but is instead related to the issues of proximate causation or standing." *City of Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 768 N.E.2d 1136, 1147 (2002). A claim is too remote if it is "the remote consequence of the defendant's misconduct (causation) or is wholly derivative of the harm suffered by a third party (standing)." *Id.* at 1148. To be a proximate cause, the injury flowing from Defendants' wrongful conduct must be "the natural and probable consequence" of the wrongful conduct and must have been "foreseen or anticipated by the wrongdoer as likely to follow" his wrongful act. *Jeffers v. Olexo*, 43 Ohio St.3d 140, 539 N.E.2d 614, 617 (1989). In this case, Plaintiffs have submitted sufficient evidence that Defendants knew of the risk that a child could become strangled on the Cosco highchair. But a reasonable jury could not conclude that Defendants could have foreseen that such an injury would further result in a back injury for the mother of the injured child. Even if Defendants could foresee that the mother of an injured child would expend resources in the care of her child, Mrs. McConnell's back injury is too remote for Defendants to have been able to anticipate. Therefore, Defendants' Summary Judgment Motion with respect to Mrs. McConnell's back injury is **GRANTED**.

## F. Lost Wages Damages

■ Plaintiffs allege that Defendants are liable to them for Matthew's lifetime of lost wages. Plaintiffs have presented an expert opinion regarding how much Matthew would have earned during his lifetime. Defendants ask the Court to grant summary judgment finding that Plaintiffs are not entitled to lost wages damages because Plaintiffs' expert opinion is too speculative, assuming, for example, that Matthew would graduate from college and earn the salary of an average college graduate. Defendants rely on *Drayton v. Jiffee Chemical Corp.*, in which the court found that similar evidence was too speculative where an expert testified to the earning potential of a seven-year-old girl. 591 F.2d 352, 364 (6th Cir.1978). Plaintiffs argue, however, that this is an evidentiary issue, and is not ready for the Court's consideration at this time.

Indeed, *Drayton* does not hold that lost wages damages are not available, but rather decides that certain expert testimony is too speculative. *See id.* This is an evidentiary issue the Court should consider at a later time. Defendants argue that the Court must decide now that Plaintiffs' expert opinion is too speculative, because in the absence of this opinion, Plaintiffs have no evidence that Matthew has lost wages. This argument is without merit because even in the absence of any expert testimony, a reasonable jury could conclude that Matthew would earn some money in his lifetime. Therefore, Defendants' Summary Judgment Motion with respect to Matthew's lost wages is **DENIED.**

## G. Punitive Damages

■ To recover punitive damages in a strict products liability case, Plaintiffs must prove by clear and convincing evidence that the injury sustained "was the result of misconduct of the manufacturer or supplier in question that manifested a flagrant disregard of the safety of persons who might be harmed by the product in question." Ohio Rev.Code Ann. § 2307.80 (West Supp.2002). Alternatively, to recover punitive damages for a negligence claim, Plaintiffs must prove that Defendants acted with actual malice, defined as "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 575 N.E.2d 416, 419 (1991). Such a great probability "can be likened to high foreseeability." *Id.* at 420.

■ Defendants contend that Plaintiffs are not entitled to punitive damages in this case because Plaintiffs have not presented evidence that Defendants acted with flagrant or conscious disregard for Matthew's safety. Plaintiffs argue that they have presented evidence that officials at Cosco knew of the risks of strangulation associated with their highchairs and that they were aware of other incidents where children had been strangled in highchairs. Defendants reply that, although they were aware of these harms, they did what they could to minimize them. Cosco installed straps and placed warnings on its highchairs. Furthermore, Cosco played an active role in developing standards for highchair safety and invested in research of improved designs.

The evidence before the Court does not establish clearly whether Cosco acted with flagrant or conscious disregard of the safety of those who would use its highchairs. Based on Plaintiffs' evidence that Defendant Cosco knew of the risks associated with its highchair and knew of available alternative designs, a reasonable jury could conclude that Cosco acted with flagrant or conscious disregard. The deposition testimony of Robert Craig, who has served in several quality control and safety positions at Cosco, reveals that Cosco was aware that children could and did die from

strangulation in Cosco highchairs. Although Mr. Craig served on various committees to write safety standards and improve the safety of highchairs, Cosco did not implement a passive restraint system until the late 1990s. Among other Cosco officials, Terry Emerson and Richard Glover knew that the safety straps on Cosco highchairs were often not used and that children were often left unattended in Cosco highchairs. Therefore, a reasonable jury could conclude that the risk of strangulation in Cosco's highchairs was highly foreseeable. Given this high foreseeability, a jury could conclude that Cosco acted with flagrant or conscious disregard because it did not implement a passive restraint system sooner.

■ With respect to Defendant Penn Traffic, however, Plaintiffs have presented no evidence of a flagrant or conscious disregard for Matthew's safety. Although Penn Traffic sold the highchair without a box or instruction manual, Plaintiffs present no evidence to suggest that Penn Traffic knew that selling the highchair without such materials could pose a harm to users of the highchair. Therefore, the Court **GRANTS** summary judgment with respect to punitive damages as to Defendant Penn Traffic and **DENIES** summary judgment with respect to punitive damages as to Defendant Cosco.

### H. Superseding Proximate Cause

■ Defendants make the overarching argument that any defects in Ms. McClung's highchair were not the proximate cause of Plaintiffs' injuries because the criminal and negligent conduct of Ms. McClung was a superseding or intervening cause that relieves Defendants of all liability. In fact, Plaintiffs' expert, Ms. Deppa, testified that if Ms. McClung had used the safety straps on the highchair and had not left Matthew alone, he would not have suffered any injury. Plaintiffs argue in

response that Ms. McClung's actions were not an intervening cause because her actions were foreseeable.

■ Intervening cause is a defense to a strict products liability claim if the "intervening cause is unforeseeable and is the proximate cause of the injury." *R.H. Macy & Co. v. Otis Elevator Co.*, 51 Ohio St.3d 108, 554 N.E.2d 1313, 1317 (1990). If the intervening cause "merely contributed" to the injury, then Defendants would be completely liable for the injury. *Id.* Only if the intervening cause "completely eliminated" the effect of Defendants' defective product would Defendants be free of liability. *Id.* The court in *R.H. Macy* approved a trial court's use of Ohio Jury Instructions that provide that an intervening cause must be both "new and independent." *Id.* (citing 1 Ohio Jury Instructions § 11.30 (1983)). The cause must be "new" in that "it could not reasonably have been foreseen" and it must be "independent" in that there is an "absence of any connection or relationship of cause and effect between the original and subsequent act." *Id.*

In this case, Defendants assert that Ms. McClung's criminal and negligent acts of leaving Matthew McConnell unattended and caring for too many children without a child care license constitute a new and independent cause of Matthew's injuries. First, Defendants allege that Ms. McClung's actions were independent in that they were not connected in any way with the allegedly defective design or warnings of Defendants' highchair. Second, Defendants allege that they could not have foreseen the conduct of Ms. McClung because her conduct was criminal and she repeatedly ignored warnings that she was caring for too many children without a license.

First, a reasonable jury could conclude that there is a connection between Defendants' conduct and Ms. McClung's actions

if the jury found the warnings on the highchair to be inadequate. A jury could find that Ms. McClung would not have left Matthew unattended but for the inadequate warnings. Second, a reasonable jury could find that Ms. McClung's actions were foreseeable. Plaintiffs have presented deposition testimony that Cosco officials knew that parents may leave their children unattended in highchairs and may not use the safety straps to hold their children in place. The precise reason why Ms. McClung left Matthew unattended is not entirely relevant, so long as she left him unattended for some foreseeable reason. In this case, a reasonable jury could conclude that Defendants could foresee someone leaving a child unattended in a highchair while she went upstairs to tend to other children.

Defendants make much of the fact that Ms. McClung pled guilty to child endangering pursuant to Ohio Revised Code section 2919.22(A), for which a culpable mental state of recklessness is required. *See State v. McGee,* 79 Ohio St.3d 193, 680 N.E.2d 975, 975 (1997). Furthermore, Defendants argue that criminal conduct is less foreseeable than negligent conduct, citing a comment to the Restatement (Second) of Torts section 302B.

First, although criminal conduct may be less foreseeable than negligent conduct, given the evidence in this case, a reasonable jury could conclude that Defendants could foresee that a caretaker would leave a child unattended while caring for other children in an upstairs room. A reasonable jury could also conclude that Matthew would have suffered his injuries even if Ms. McClung had been caring for a legal number of children on January 3, 1997, because she still would have left him unattended while tending to other children upstairs.

Second, section 302B of the Restatement (Second) of Torts is not clearly relevant to this case, and even if it is, it explicitly states that criminal conduct of a third party may be foreseeable. Section 302B states the following: "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." Restatement (Second) of Torts § 302B (1965). Defendants cite no court that has applied this provision in the context of products liability. Rather, they merely cite comment d to this provision, which notes that an actor generally has less reason to anticipate criminal conduct than negligent conduct. Because intervening cause is an affirmative defense to liability, Defendants must prove that they could not foresee Ms. McClung's actions. The mere fact that criminal conduct is generally less foreseeable than negligent conduct does not establish that in this case Defendants could not foresee that Ms. McClung might leave Matthew unattended in the Cosco highchair. Defendants' Summary Judgment Motion predicated on superseding proximate cause is **DENIED**.

## I. Legal Duty to Control Actions of Third Party

Defendants argue that they had no legal duty to control the actions of a third party, specifically, Ms. McClung. Plaintiffs, however, do not claim that Defendants did have such a duty to control Ms. McClung. Rather, their claim is based on product liability. Defendants' Summary Judgment Motion based on this argument is **DENIED**.

## J. $300,000 Set–Off

Because Plaintiffs have already received $300,000 from Ms. McClung's liability insurer, they now concede that Defendants are entitled to a set-off in that amount if they win a monetary judgment against De-

fendants. The Court recognizes this $300,000 set-off.

## VI. Conclusion

For the foregoing reasons, Defendants' Summary Judgment Motion is **GRANTED** with respect to Plaintiffs' manufacturing defect claim, Mrs. McConnell's back injury claim, and Plaintiffs' punitive damages claim as to Defendant Penn Traffic; Defendants' Summary Judgment Motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**