NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0319n.06
Filed: May 5, 2006

No. 05-3916

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TRAVIS WADE, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| DIAMANT BOART, INC., | ) | |
| | ) | **O P I N I O N** |
| Defendant-Appellee. | ) | |

BEFORE:     MERRITT, MARTIN, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  On May 10, 1999, Plaintiff Travis Wade was greasing a bearing on a concrete-cutting saw manufactured by Defendant, Diamant Boart, Inc., when his right hand accidentally brushed up against a moving belt, was pulled in, and was severed.  Plaintiff filed suit, alleging that the saw was defectively designed and was not accompanied by adequate warnings.  The district court granted summary judgment in favor of Diamant Boart on all claims.  Plaintiff filed a timely notice of appeal.  For the following reasons, we affirm in part and reverse in part the order of the district court and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

In 1995, Plaintiff Travis Wade started working as a concrete cutter for Concrete Cutting and Coring Services ("CCCS"), which is owned by Plaintiff's half-brother Brad Wade.  Brad Wade taught Plaintiff how to maintain and grease the Cushion Cut 65 and Cushion Cut 35 concrete cutting saws the company used at the time, and Plaintiff eventually became the designated trainer of new

employees. Brad Wade told Plaintiff to grease the bearings on the saws' arbor shafts with the engine running and the saw blade turning. This became Plaintiff's practice.

CCCS bought a Quanta Q1200 walk-behind concrete-cutting saw ("the Quanta") from its manufacturer, Diamant Boart, Inc. in 1996. The saw came with a warning decal on the operator's console, which is directly in front of the operator as he or she uses the saw. On the decal, the word "WARNING" first appears, in large, black, capital letters, between two triangles containing exclamation points, all set on a red or orange background. Below that in black, capital letters, the decal states, "Failure to follow the warnings and instructions below may result in serious injury or death." The decal then contains a list of admonishments, including: "Read entire operator's manual before operating this machine. Understand all warnings, instructions, and controls. If you do not have an operator's manual, call toll free . . ."; "Machinery Hazard - Always keep all guards in place and in good condition. Always keep all parts of your body away from blade and all other moving parts"; and "Never operate this machine with the engine hood removed."

The Quanta also came with an operator's manual. The manual states on the table of contents page, in capital letters next to a triangle containing an exclamation point, "Operators of this equipment must read and be familiar with the safety warnings. Failure to obey warnings may result in injury or death." The table of contents indicates that "safety warnings" appear on pages eight and nine, and that "maintenance" instructions appear on pages twenty-eight and twenty-nine, though they actually appear on pages twenty-five and twenty-six. Page eight of the manual states, at the top, in capital letters, "Safety First!" Below that, in a box and flanked by two triangles with exclamation points in them, are the words "Warning Do's and Do Not's." Below that, in capital

letters, the manual states "Warning: Failure to comply with these warnings and operating instructions could result in death or serious bodily injury." The listed "do's" and "do not's" include, "DO read this entire operator's manual before operating this machine. Understand all warnings, instructions and controls. . . . DO keep all parts of your body away from the blade and all other moving parts. . . . DO establish a training program for all operators of this machine. . . . DO NOT operate this machine unless you have read and understood this operator's manual. . . . DO NOT operate this machine without the blade guard or other protective guards in place. . . . DO NOT work on this machine while the engine is running." On page seventeen of the manual, under the heading "Scheduled Maintenance Quick Reference," is a triangle containing an exclamation point and the warning: "ALWAYS park the machine on a level surface with the engine 'OFF' and the ignition switch set in the 'OFF' position before performing any maintenance." On page twenty-five, under the heading "Maintenance," the manual reiterates this warning: "Before performing any maintenance, ALWAYS park the machine on a level surface with the Engine OFF and the Engine Start Switch in the "OFF" position." Immediately below this the manual describes the frequency and method of lubricating the bearings, including the blade shaft bearings.

Plaintiff read the warnings on the Quanta's operator console, including the instruction to read the entire operator's manual before using the machine. However, neither Plaintiff nor Brad Wade ever read the operator's manual, and no one trained Plaintiff on the proper maintenance of the Quanta. Plaintiff's method of lubricating the Quanta's arbor shaft bearings, a task he preformed daily, was to start the engine, open the engine hood, which folded open on hinges, climb into the hood and kneel on the inside of the hood grate, reach into the engine compartment while the engine

was running, and grease the bearings using a grease gun. Plaintiff had just finished greasing the bearings in this manner on May 10, 1999, and was replacing a cap on the right side grease reservoir, moving slowly because there was a moving belt inches from his hand, when his hand or glove got caught in the belt. The belt drew Plaintiff's hand into the moving machinery, severing it.

At Plaintiff's deposition, defense counsel showed Plaintiff a copy of the Quanta manual, which Plaintiff acknowledged was available in the CCCS office for him to read. Plaintiff acknowledged that the manual instructed users of the Quanta to lubricate the blade shaft bearings with the engine off, and warned them that failure to do so could result in death or serious injury. Finally, Plaintiff acknowledged that if he had turned off the engine before greasing the bearings, his injury would not have occurred.

Plaintiff filed suit claiming that the Quanta was defectively designed and that Diamant Boart failed to adequately warn Plaintiff of the dangers posed by the moving belts. The complaint relied upon theories of breach of implied warranty, strict liability in tort, violation of Ohio's product liability statute, and negligence. Plaintiff also sought exemplary and punitive damages. Diamant Boart moved for summary judgment. The district court granted summary judgment in favor of Diamant Boart on the basis that any defect in the Quanta or inadequacy of warnings did not proximately cause Plaintiff's injury. With the underlying claims rejected, the district court granted summary judgment in favor of Diamant Boart on the issue of punitive damages as well. Plaintiff filed a timely appeal.

## II. ANALYSIS

### A.    Standard of Review

This court reviews an order granting summary judgment de novo. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005); *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005); *Valentine-Johnson v. Roche*, 386 F.3d 800, 807 (6th Cir. 2004). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734; *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734; *Valentine-Johnson*, 386 F.3d at 807. Any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). Nevertheless, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter*, 385 F.3d at 689-90; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

### B.    Failure to Adequately Warn

Plaintiff's complaint alleges that Diamant Boart failed to adequately warn users of the dangers posed by the arbor drive shaft belts located under the Quanta's hood. The district court held that Plaintiff could not prevail on this claim as a matter of law because of the undisputed fact that he ignored the warning directing operators to read the instruction manual and was, therefore, not aware of the warnings and maintenance instructions provided in the manual. The district court found that Plaintiff's failure to read and heed the warnings provided necessarily precluded Plaintiff from being able to establish that the alleged failure to adequately warn was the proximate cause of his injuries.

The district court's ruling was correct.[1] Plaintiff acknowledged that if he had read and followed the maintenance instruction in the operator's manual, his accident would not have happened. Ohio law is clear that where a plaintiff fails to read and/or follow clear instructions, and where the accident would not have happened had the plaintiff followed the instructions, the plaintiff's failure to adequately warn claim fails for lack of the requisite proximate cause. *See Freas v. Prater Construction*, 573 N.E.2d 27, 31-32 (Ohio 1991); *Sheets v. Schmidt & Assocs., Inc.*, No. C-020726, 2003 WL 21414790, at ¶ 12 (Ohio Ct. App. June 20, 2003) (citing *Richards v. C. Schmidt Co.*, 561 N.E.2d 569, 571-72 (Ohio Ct. App. 1989); *Lewis v. Clark Equip. Co.*, No. C-020271, 2003 WL 1571581, at ¶ 8 (Ohio Ct. App. Mar. 28, 2003)); *see also Mohney v. USA Hockey, Inc.*, 300 F. Supp. 2d 556, 578 (N.D. Ohio 2004) (citing *Hisrich v. Volvo Cars of N. Am.*, 226 F.3d 445, 451-53 (6th Cir. 2000); *Phan v. Presrite Corp.*, 653 N.E.2d 708, 711 (Ohio Ct. App. 1994)).

---

[1]Plaintiff's brief implied, and at oral argument his counsel explicitly stated, that the district court's dismissal of the failure to adequately warn claim is not being challenged on appeal.

Since Plaintiff did not read the operator's manual, he would not have been aware of any additional or more specific warnings even if they have been provided. Consequently, any such failure to adequately warn did not cause Plaintiff's injury. Similarly, in light of Plaintiff's failure to heed the warning printed on the Quanta itself to read the operator's manual, there is no indication that Plaintiff would have heeded any other warnings which might have been placed directly on the Quanta. Since Plaintiff did not establish the necessary element of proximate cause for his failure to adequately warn claim, the district court properly granted summary judgment on that claim.

## C.     Defective Design

Plaintiff also claims that Diamant Boart's design of the Quanta was defective because it did not provide a fixed bolt-on guard over the exposed moving belts similar to the guards provided on all previous and all subsequent walk-behind concrete-cutting saws. The district court rejected this claim on proximate cause grounds as well, holding that "[m]ultiple Ohio courts have held that where a plaintiff fails to read and/or follow the clear instructions and where the accident would not have happened had the plaintiff followed the instructions, the plaintiff's strict products liability and negligence claims will fail for lack of requisite proximate cause." Although this statement is accurate with respect to failure to adequately warn claims, the district court erred by extending the principle to cover all design defect claims as well. There is no basis in Ohio law for such a blanket extension. Two of the cases cited by the district court involved only failure to warn claims and had nothing to do with defective design. *Hisrich*, 226 F.3d at 450-53; *Richards*, 561 N.E.2d at 571-72. Most of the remaining cited cases addressed design defect claims as well as failure to warn claims, but dismissed the design defect claims on separate grounds than the failure to warn claims (which

were dismissed on the basis that the plaintiff did not read or follow instructions which would have prevented the injury). *Sheets*, No. C-020726, 2003 WL 21414790, at ¶ 16 (holding that the design defect claim failed as a matter of law because the uncontroverted evidence established that the injury would have occurred even if the alternative design posited by the plaintiff had been incorporated in the design); *Phan*, 653 N.E.2d at 710-11 (rejecting design defect claim against a component manufacturer based on the lack of evidence that the allegedly defective component was defective by itself); *Mohney*, 300 F. Supp. 2d at 578 (observing that exclusion of plaintiff's experts left the plaintiff without any evidence that the design in question was defective or that any such defect caused his injury). Only one of the cases cited by the district court dismissed a design defect claim on the basis that the plaintiff did not follow instructions which would have prevented his injury. *See Freas*, 573 N.E.2d at 31-32. However, another Ohio design defect case sent a claim to a jury even though the plaintiff failed to follow instructions which would have prevented the injury. *See Knitz v. Minster Machine Co.*, 432 N.E.2d 814, 819 (Ohio 1982).

In *Freas v. Prater Construction*, the Ohio Supreme Court addressed a design defect claim involving a crane accident. 573 N.E. 2d 27 (Ohio 1991). Rocky Blankenship, a crane operator, was standing directly under a crane boom while dismantling it. The crane fell and killed Blankenship. The segments of the crane's boom were held together with headed pins which were supposed to be installed with the head on the inside so that the pins could be removed by hammering them from the outside (while standing next to the boom). The crane's instruction manual explained that if the headed pins were installed incorrectly with the head on the outside, the boom should be disassembled by standing on the opposite side of the boom and using a long steel bar and a hammer

to drive the pins from the center to the outside. When faced with incorrectly installed pins, Blankenship did not follow this procedure (which he had read and was familiar with) but instead stood directly under the crane and hammered the pins out from the center to the outside. As a result, when the boom fell, he was directly under it instead of to the side where he would have been safe. The plaintiff argued on behalf of Blankenship's estate that the use of headed pins instead of headless pins (which could not have been "incorrectly" installed) was a design defect. The Ohio Supreme Court observed that the warnings and instructions in the manual which Blankenship had read were sufficient to have enabled him to dismantle the boom safely if he had followed them. Consequently, the court concluded that the necessary element of proximate cause could not be established.

In *Knitz v. Minster Machine Company* the plaintiff was working a punch press which inadvertently cycled while her hand was in the press area, amputating two of her fingers. 432 N.E.2d 814 (Ohio 1982). The punch press was operated by a foot switch and also incorporated pull-back guards which were attached to the operator's hands and physically pulled the operator's hands out of the way when the ram was descending. Plaintiff did not have the pull-back guards attached to her wrists when the accident occurred, contrary to specific instructions to never put her hands in the press area without the guards attached to her wrists. The Ohio Supreme Court pointed to expert testimony in the record which indicated that use of a foot switch to operate a punch press was unreasonably dangerous without the use of a point-of-operation guard. The court concluded that this testimony was sufficient to send the design defect claim to a jury, and did not comment on the fact that the plaintiff's injury would not have occurred if she had followed the instructions to use the pull-back guards.

Ohio case law illustrates that a plaintiff's failure to read or heed product warnings may demonstrate that an alleged design defect did not proximately cause the plaintiff's injuries, but does not necessarily mandate that result. The proper result in any given case depends upon the extent to which the plaintiff can demonstrate that the suggested alternative design would have prevented the injury. In *Sheets*, the Ohio Court of Appeals found that there was no conceivable way the alternative design would have prevented the injury. No C-020726, 2003 WL 21414790 (Ohio Ct. App. June 30, 2003). Therefore, the alleged design defect could not have proximately caused the injury. At the other end of the spectrum, in *Kinitz* the alternative design almost certainly *would* have prevented the plaintiff's injury. 432 N.E.2d 814. These circumstances provided sufficient evidence of the alleged design defect proximately causing the injury to send the claim to a jury.[2] In *Freas*, there was nothing about the alternative design of using headless pins which would have inherently prevented the injury. With either headed or headless pins, Blankenship had two available methods for removing the pins. With the headed pins he could stand directly under the boom as he did, or he could have followed the instructions in the manual and stood on the opposite side of the boom and used a steel pole to reach the pins. The only difference the headless pins would have made would have been to change this second alternative to be standing on the side of the boom where the pins were installed and driving them out from the outside towards the center. Since Blankenship chose the unsafe method of the two available methods under the actual facts of the case, the Ohio Supreme

---

[2]Although the majority did not explicitly discuss the proximate cause element, it was clearly aware of its implicit ruling on that issue because one dissenting justice argued that the causation element had not been established. 432 N.E.2d at 821 (Krupansky, J., dissenting).

Court did not believe that there was sufficient evidence for a reasonable jury to conclude that Blankenship would have chosen the safer method if headless pins had been used. Therefore, the court found that the plaintiff had not established a genuine issue of fact of whether the alleged design defect of using headed pins proximately caused Blankenship's death.

In the case at bar, Plaintiff has proffered expert testimony that if the Quanta had incorporated fixed bolt-on belt guards, Plaintiff's injury *would not have occurred*. This is precisely the scenario which was present in *Knitz*. Both cases present two separate but-for causes of the plaintiff's injury: (1) the injury would not have occurred if the plaintiff had followed the instructions; and (2) the injury would not have occurred if the machine at issue had incorporated the suggested guard. The Ohio Supreme Court has determined that under such circumstances the ultimate determination of proximate cause is left to the jury. *See Knitz*, 432 N.E.2d 814. This result is consistent with the general principle that under most circumstances proximate cause is an issue properly left to the jury. *See Sigman v. General Electric Co.*, 602 N.E.2d 711, 713 (Ohio Ct. App. 1991) ("Ordinarily, the determination of proximate cause is a decision to be made solely by the trier of fact.") (citing *Cremeans v. Willmar Henderson Mfg.*, 566 N.E.2d 1203, 1209 (Ohio 1991); *Springsteel v. Jones & Laughlin Steel Corp.*, 192 N.E.2d 81, 87 (Ohio Ct. App. 1963)).

In light of the foregoing analysis, Plaintiff has established a genuine issue of material fact on the proximate cause element of his design defect claim. The district court's conclusion to the contrary was error. Yet that was the sole basis of the district court's grant of summary judgment on the design defect claim. The district court did not address whether Plaintiff demonstrated a genuine issue of fact regarding the other elements of his design defect claim or whether Diamant Boart was

entitled to summary judgment on the design defect claim on the basis of its affirmative defense of assumption of the risk. Since the district court has not yet addressed these issues, we remand to allow the district court to address them in the first instance.

**D.     Punitive Damages**

Since the district court found that Plaintiff's products liability claims failed as a matter of law, it held that the claim for punitive damages must also fail. In light of the fact that the district court's grant of summary judgment in favor of Diamant Boart on the design defect claim is reversed and remanded for further proceedings, the ruling on the punitive damages claim is vacated and remanded for reconsideration as well.

### III.  CONCLUSION

The district court properly held that Plaintiff's failure to warn claim failed as a matter of law for lack of evidence of the necessary element of proximate cause. However, the district court erred when it concluded that Plaintiff's failure to heed and read the warnings and instructions precluded him from being able to demonstrate proximate cause on his design defect claim. For the foregoing reasons, we AFFIRM in part and REVERSE in part the order of the district court and REMAND the case for further proceedings consistent with this opinion.