NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0241n.06

No. 12-3464

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Mar 07, 2013*
DEBORAH S. HUNT, Clerk

RICHARD BROYLES,

     **Plaintiff-Appellant,**

v.

KASPER MACHINE CO., et al.,

     **Defendants,**

**and**

IMS DELTAMATIC GROUP; IAC SIDNEY, LLC,

     **Defendants - Appellees.**

_____/

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

BEFORE:    CLAY, GILMAN, and McKEAGUE, Circuit Judges.

     **CLAY, Circuit Judge.** Plaintiff Richard Broyles appeals the district court's grant of summary judgment to Defendants IMS Deltamatic Group ("Deltamatic")[1] and IAC Sidney LLC ("IAC"), in connection with a workplace accident suit. Plaintiff's claims against Deltamatic were defective product design under Ohio Revised Code § 2307.75 and failure to warn under § 2307.76. His action against his employer, IAC, was for workplace intentional tort under § 2745.01. For the following reasons, we **AFFIRM** the district court's grant of summary judgment.

---

     [1]There is some confusion in the record as to whether this Defendant's correct name is "IMS Deltamatic Group" or "IMS Deltamatic Spa." For the sake of consistency, we refer to this party throughout as "IMS Deltamatic Group."

**BACKGROUND**

A.      **Factual Background**

Plaintiff was a supervisor at the IAC facility and had worked there since 1998.[2] He was in charge of Bay 26, the area in which the accident occurred, and was responsible for ensuring its smooth operation, enforcing safety procedures, halting production when necessary, performing minor troubleshooting tasks on machinery, and contacting maintenance when problems with the machine arose. He did not, however, have any mechanical, in-service-maintenance, or engineering training, and was never a member of the maintenance department.

1.      **The Bay 26 Machine**

Located in Bay 26 was a carpet-forming machine that was manufactured by Deltamatic to mold and cut carpet and plastic for vehicle flooring. Shaped like the letter "P," the machine's manufacturing process started at the base of the "P" and moved up to the circle. At the end of the line, pieces of molded carpet and plastic were secured by clamps and placed onto an automated "carousel" or turntable that stood approximately two to three feet from the factory floor. This carousel formed the circle of the "P." It had three workstations: at station one, molded carpet sections were transported from the line onto the carousel; at station two, three robotic arms cut excess material from the floor pieces via jets of water; and at station three, employees removed the molded pieces from the carousel and took them to another area for further processing. The carousel rotated from one station to the next once every minute.

---

[2]Plaintiff started at the facility under its previous owners, Lear Corporation, and continued to work at the facility through the 2007 change in ownership to IAC. (R. 83, Pl.'s Dep., at 49–50.)

There were several safety measures in place for Bay 26. First, the machine came accompanied by a 4,000-page manual, which contains a page cautioning users as follows: "During maintenance phases, the turntable structure presents an impact, trip and falling hazard. (a) Do not walk on the turntable structure; (b) always check at each safety reset that no person or objects are present within the protected area. The access of the turntable zone is forbidden to the operator." (R. 82, Ex. 11, Safety Manual, at p. 33.) Though Plaintiff asserts that he never saw the manual, he admitted in his deposition that he was fully aware that the carousel presented an impact, trip and falling hazard. Second, to prevent access to the restricted area of the machine, the carousel was surrounded by a wire fence equipped with two interlocking doors, which caused the carousel to stop if the doors were opened.

Third, at the one opening in the fence where operators removed the molded pieces at station three, the floor was painted yellow and guarded by two sensory devices, a "SICK eye" and a "light curtain." The light curtain stopped the carousel if its light beam was broken, and the SICK eye sounded an alarm if someone approached the yellow area where the light curtain was located. Once the light curtain was activated, the machine could be turned on only when the area of the light curtain was clear and an operator manually pressed a reset button. In normal operation, operators would continuously reset the operation after retrieving the molded pieces from station three. Fourth, Deltamatic provided two large warning signs that were located near this restricted area in Bay 26 which read: "Notice: No Employees Beyond this Point" and "Warning: Do Not Climb On Carousel While Machine is Running." (R. 82, Ex. 10.) Lastly, IAC implemented a "lockout/tag-out" procedure that required employees to shut down malfunctioning equipment before performing any

3

maintenance or service. Plaintiff was trained in this procedure. All of these features and warnings were in place and functioning on the day of his accident. Plaintiff was aware of all of them at the time of his injury, except for the equipment manual.

However, the Bay 26 machine was not 100% hazard free. The space between the carousel and the fencing was large enough for a person to stand inside the restricted area past the light curtain and walk the perimeter of the machine without coming into contact with it. Deltamatic's experienced technicians often stood in this area while the light curtain was disengaged and remained in the restricted area while the carousel was reset in order to perform maintenance on the machine while it was in operation. IAC employees at all levels, including Plaintiff, similarly walked in the restricted perimeter area of Bay 26 past the light curtain despite the warning signs, and inspected the machine while it was in operation. Several IAC employees had even stepped onto the carousel on occasion.

## 2.     The Accident

On February 19, 2008, Plaintiff was informed that the Bay 26 machine was having problems with misfeeding the molded pieces. He believed he knew the reason for the malfunction because he had experienced a similar problem in the past. He called the maintenance department about the problem, but entered the restricted area of the carousel to diagnose the problem before maintenance arrived. Notably, Plaintiff failed to use either the interlocking gates, the lockout procedures, or his inherent authority as supervisor to halt production. Plaintiff admitted that he expected the operators to continue to reset the operation and allow the carousel to continue its normal rotation process while he was in the restricted area.

4

Initially, Plaintiff simply walked the perimeter of the carousel to observe the problem, but after standing behind the machine for approximately five minutes and watching it continue in operation, he decided to climb up onto the carousel to jiggle either a clamp on the machine or the carpet. Though the operators knew Plaintiff was in that area, they also knew he could stand in the area without contacting the machine. Plaintiff did not advise the operators that he would be getting onto the carousel nor did he tell them to stop production at any point. Consequently, the operators continued resetting the machine even as Plaintiff decided to climb onto the carousel.

Upon seeing Plaintiff for the first time on top of the carousel, but having already reset the operation, one of the operators yelled to him that the carousel was about to rotate. Plaintiff attempted to get off the machine before the rotation but lost his balance and fell when the carousel moved in its ordinary fashion. Tragically, Plaintiff's fall caused a serious injury to his spine, paralyzing him from the waist down. He was provided workers' compensation benefits for his injuries.

**B.      Procedural History**

Plaintiff filed a products-liability suit against Defendant Deltamatic, the machine manufacturer, and Kasper Machine Company[3] in the Court of Common Pleas in Shelby County, Ohio. Plaintiff's action was removed to the district court where, after two amended complaints, he asserted four product-liability claims against Deltamatic: 1) manufacturing defect, 2) failure to

---

[3]Plaintiff's claims against Kasper Machine Company were dismissed with prejudice in June 2011 after the parties reached a settlement agreement. (R. 70.)

conform to a material representation, 3) inadequate warning, and 4) design defect. He also asserted one claim against his employer, Defendant IAC: 5) workplace intentional tort.

Plaintiff's defective-design claim was supported by the depositions of two experts, Dr. Steve Kramer and Vern Mangold, Jr., both of whom testified that Plaintiff's accident was proximately caused by inadequate safety design features in the Bay 26 machine. Specifically, Kramer testified that had a light curtain similar to the one installed at the opening at station three been installed over the carousel, Bay 26 would have been inoperable while someone was standing atop the carousel to repair it. Mangold testified that had the machine been equipped with a device that permitted Plaintiff to control Bay 26's operation while standing within the restricted area, he would have been able to prevent the inadvertent resetting of the operation that caused the carousel to move.

Defendants moved for summary judgment on all claims. In his response, Plaintiff abandoned claims one and two against Deltamatic. On March 30, 2012, the district court granted summary judgment to Defendants on the remaining claims. The district court found that Plaintiff failed to establish proximate cause to survive summary judgment on the product liability claims because he failed to read the warning signs and deliberately avoided existing safety features; and Plaintiff failed to show that IAC specifically intended to injure him for purposes of establishing the workplace intentional tort claim. Plaintiff timely filed a Notice of Appeal on April 16, 2012.

## DISCUSSION

This Court reviews *de novo* a district court's grant of summary judgment, drawing all reasonable inferences in favor of the non-moving party. *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009). But where "the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law," summary judgment should be granted. Fed. R. Civ. P. 56(a). Specifically, summary judgment is proper when the nonmoving party fails to establish an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In a diversity action, we apply state law and adopt the principles of the state's highest court. *See Northland Ins. Co. v. Guardsman Prods., Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). But where that court has not spoken, this Court will consider the principles announced by the state's other appellate courts for guidance unless it is shown that the state's highest court would decide the issue differently. *Id.* Upon a showing from the movant that there are no longer any disputed facts, *Celotex*, 477 U.S. at 322, the non-moving party must go beyond the content of its pleadings to set forth specific facts indicating the existence of a genuine issue, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We now turn to analyze each of Plaintiff's claims on appeal.

**A.    "Failure to Warn" Claim**

To prove a "failure to warn" claim, a plaintiff must establish "(1) a duty to warn against reasonably foreseeable risks; (2) breach of this duty; and (3) an injury that is proximately caused by the breach." *Graham v. Am. Cyanaimid Co.*, 350 F.3d 496, 514 (6th Cir. 2003) (applying Ohio law). This basic tort principle has been codified in Ohio Revised Code § 2307.76, which provides specifically that a products liability claim may arise under a theory of inadequate warning or instruction if "at the time of marketing, [] when [the product] left the control of its manufacturer," or "at a relevant time after it left the control of its manufacturer," there was a duty to warn and a breach of that duty. *Id.* § 2307.76(A)(1) and (2).

7

Whether a manufacturer that has provided a warning breached its duty turns on whether the existing warning was adequate in both its content and display. *See Hisrich v. Volvo Cars of North America, Inc.*, 226 F.3d 445, 452–53 (6th Cir. 2000) (citing *Seley v. G.D. Searle & Co.*, 423 N.E.2d 831, 837 (Ohio 1981)). The warning must "disclose[] all inherent risks" and make the product safe when used as directed. *Boyd v. Lincoln Elec. Co.*, 902 N.E.2d 1023, 1030 (Ohio Ct. App. 2008). It must also be displayed in such a manner that a typical product user would observe and appreciate the warning. *See Hisrich*, 226 F.3d at 453 (finding that "form, manner of expression, or lack of exigency" were relevant to the inquiry); *see e.g.*, *Boyd*, 902 N.E.2d at 1030 (finding that warnings in obscure places on packaging, which were rarely if ever seen by typical welder, did not absolve a manufacturer of liability); *Freas v. Prater Constr. Corp., Inc.*, 573 N.E.2d 27, 31–32 (Ohio 1991) (noting that warnings in instruction manuals may not suffice in every case).

The proximate cause inquiry turns on whether adherence to the existing warning would have prevented the plaintiff's injury. "Ohio law is clear that where a plaintiff fails to read and/or follow clear instructions, and where the accident would not have happened had the plaintiff followed the instructions, the plaintiff's failure to adequately warn claim fails for lack of the requisite proximate cause." *Wade v. Diamant Boart, Inc.*, 179 F. App'x 352, 355–56 (6th Cir. 2006) (hereinafter "*Wade II*") (collecting Ohio cases).

Even assuming there was a duty,[4] Plaintiff has not made a sufficient showing that the two large warning signs posted in Bay 26: 1) would not have prevented his injury if followed; or, 2) were inadequate in form or manner of expression. *See Boyd*, 902 N.E.2d at 1030. It is clear that Plaintiff's fall and ultimate injury would not have occurred had he followed the warnings not to enter the restricted area or stand on the carousel while the machine was in operation. Moreover, it is apparent that the above-mentioned warning signs were fairly large and posted in Bay 26 in plain view prior to and on the day of Plaintiff's accident. Indeed, Plaintiff admits to seeing the signs posted in the area. Thus, Plaintiff has failed to set forth specific facts to support his assertion that the warnings provided were inadequate.

Plaintiff, however, argues that the conduct of Deltamatic technicians—who were observed accessing the restricted area in contradiction of the posted signs—amounted to "anti-warnings" that prevented him from appreciating the explicit warning signs. We find this argument unconvincing. As an initial matter, this argument belies common sense; technicians with specialized training are expected to access machinery in a way that Plaintiff, who lacked such training, could not. Moreover, the case Plaintiff relies on, *Cooley v. Lincoln Electric Co.*, 776 F. Supp. 2d 511 (N.D. Ohio 2011), for his argument is inapposite. In *Cooley*, the district court found a jury verdict reasonable in light of evidence that showed that: 1) the defendant intentionally provided *inadequate* warnings that failed to warn about the then-known health risk of manganese poisoning associated with welding fumes

---

[4]There is no duty to warn where the danger is "open and obvious" to product users or is a matter of common knowledge. Ohio Rev. Code at § 2307.76(B). Because we decide this case on the other two prongs of the failure-to-warn test, we assume without deciding that Deltamatic had a duty in this case.

to prevent a decline in sales; and 2) the defendant purposely minimized the impact of its already insufficient warnings by providing explicit "anti-warnings," asserting in its own publication that the welding fumes were not harmful. *See id.* at 538–40. In the instant case, there is no evidence of an intent to gloss over a legitimate health risk, or even evidence of a reason to do so. Plaintiff proffers no evidence of an inadequate warning or explicit "anti-warning." Deltamatic employees did not instruct Plaintiff or any other IAC employees to access the restricted area in the manner in which Plaintiff accessed the area, nor is there evidence to support the notion that Deltamatic intended to undermine the clear messages in its posted warnings. What Plaintiff argues is that Deltamatic should be liable for his failed attempt to imitate the conduct of trained workers, despite clear and adequate warning signs discouraging such behavior. There is simply no case law to support his position.

Moreover, Plaintiff's claim fails for lack of proximate cause. Plaintiff admitted to seeing the posted signs in the area but failed to adhere to the clear instruction not to stand on the carousel. *Cf. Wade II*, 179 F. App'x at 355–56. Accordingly, we find that the district court properly granted summary judgment to Deltamatic on this claim.

**B.      Defective Design Claim**

A manufacturer may be liable for defective design upon a showing that there was a "foreseeable risk associated with [the] design or formulation" of its product that exceeded the benefits of such design, Ohio Rev. Code § 2307.75(A)–(C), and that such risk was the direct and proximate cause of the plaintiff's injury, *State Farm Fire & Gas Co. v. Chrysler Corp.*, 523 N.E.2d 489, 493 (Ohio 1988). However, a manufacturer cannot be liable if a plaintiff's harm is caused by an inherent, unavoidable characteristic of the product that cannot be eliminated without significantly

compromising its usefulness, Ohio Rev. Code § 2307.75(E), or if at the time of manufacture, there was not a feasible alternative design or formulation available to prevent plaintiff's injury, *id.* § 2307.75(F).

With respect to proximate cause, the inquiry for defective-design claims is distinct from that of failure-to-warn claims; a failure to follow clear instructions is not always dispositive of lack of proximate cause for the former. *Wade II*, 179 F. App'x at 356. While such a finding may decide *some* defective-design cases, "[t]he proper result in any given case depends upon the extent to which the plaintiff can demonstrate that the suggested alternative design would have prevented the injury." *Id*. at 357. Where there is no conceivable way the alternative design would have prevented the injury, the claim should fail for lack of proximate cause. *See id*. at 357–58 (discussing *Sheets v. Schmidt & Assoc., Inc.*, No. C-020726, 2003 WL 21414790 (Ohio Ct. App. June 20, 2003), and *Freas*, 573 N.E.2d at 31–32). But where the alternative design almost certainly would have prevented an injury, the proximate cause inquiry is preserved for the jury. *See id.* (discussing *Knitz v. Minster Mach. Co.*, 432 N.E.2d 814, 819 (1982)); *cf. Roberts v. RMB Ents., Inc.*, 967 N.E.2d 1263, 1274–75 (Ohio Ct. App. 2011) (finding that summary judgment should be granted only "where *no* facts are alleged [to] justify[] any reasonable inference that the acts or failure of the defendant constitute[d] the proximate cause of the injury") (emphasis added).

Notwithstanding, foreseeability is still an essential part of proximate cause. *Mussivand v. David*, 544 N.E.2d. 265, 272 (Ohio 1989). The injury "under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the [manufacturer] as likely to follow [its] negligent act." *See Jeffers v. Olexo*, 539 N.E.2d 614, 617 (Ohio 1989) (citation and

internal quotation marks omitted); *see also Gay v. O.F. Mossber & Sons, Inc.*, No 2008-P-0006, 2009 WL 1743939, at \*17 (Ohio Ct. App. June 19, 2009) (finding plaintiff's evidence "that the inclusion of one additional safety feature '*might have*' prevented the accident" was insufficient where "other safety devices were not utilized and numerous . . . safety rules were not obeyed") (emphasis added).

Relying on *Wade v. Diamant Boart, Inc.*, 374 F. Supp. 2d 586, 590 (N.D. Ohio 2005) (hereinafter *"Wade I"*), *rev'd in part by Wade II*, 179 F. App'x at 358, and several failure-to-warn cases the district court found:

> There is no reason to believe that the addition of one more tool to stop the carousel would have changed Plaintiff's conscious decision not to use the tools available to shut down Bay 26. There is no way to design a machine that could guard against a person aware of its danger but determined to bypass safety features. Even Plaintiff's expert, Kramer, who proposed the alternative design of an overhead light curtain, acknowledged that his proposed design would not have prevented a decision to bypass existing security features. . . . Because Plaintiff was aware of the danger and still chose to bypass the safety measures designed to prevent it, the lack of any additional safety devices suggested by the experts did not proximately cause the accident.

*Broyles v. Kasper Mach. Co.*, 865 F. Supp. 2d 887, 899 (S.D. Ohio 2012). Plaintiff urges that the district court committed reversible error in relying on *Wade I* to decide the proximate-cause issue for the defective design claim since that case was partially overturned by this Court in *Wade II*, specifically for its disposition on this very defective design issue.

To be sure, *Wade II* held that a failure to follow instructions will not suffice in every case. 179 F. App'x at 356. But the district court's decision did not rely on Plaintiff's failure to read the posted warnings to grant summary judgment on this claim. Rather, the court concluded that one cannot design a safety feature to prevent an intentional disregard of the safety feature. We would

not hesitate to support this finding had not Dr. Steve Kramer proffered an alternative design—the light curtain above the carousel—that almost certainly would have prevented Plaintiff's injury, despite Plaintiff's best efforts. *See Wade II*, 179 F. App'x at 356. The argument of whether standing atop the carousel was foreseeable would seem best left to a jury.

But even assuming proximate cause, Plaintiff's claim nonetheless fails because he assumed the risks of his injury. *See Carrel v. Allied Prods. Corp.*, 677 N.E.2d 795, 800 (Ohio 1997). Assumption of the risk is an affirmative defense to a products liability claim. *Id.*. "[T]o bar recovery of damages, the defendant must establish that the plaintiff knew of the condition, that the condition was patently dangerous, and that the plaintiff voluntarily exposed himself or herself to the condition." *Id.* This defense is not available when the plaintiff's conduct is required in "the normal performance of his job duties and responsibilities." *See Cremeans v. Wilmar Henderson Mfg. Co.*, 566 N.E.2d 1203, 1207–08 (Ohio 1991). But where the plaintiff's actions are wholly voluntary, or even contrary to the his employer's instruction, training, and notice, or common sense of the risks involved with his actions, the action should be barred. *See Knopp v. Dayton Machine Tool Co.*, No. 03-CO-60, 2004 WL 2913950, at *6–7 (Ohio Ct. App. Dec. 8, 2004) (finding that plaintiff assumed the risk because he was not expressly required to clean operating machine, and his conduct was contrary to warnings previously received); *Westover v. White Storage & Retrieval Sys., Inc.*, No. 19845, 2000 WL 1639030, at *3–4 (Ohio Ct. App. Nov. 1, 2000) (finding that plaintiff assumed the risk because he was not given an instruction to remove guard that he knew could injury him).

Plaintiff was not ordered to stand on top of the carousel to troubleshoot the operating machine prior to the maintenance worker's arrival. He was actually provided training to the

contrary; the lockout procedure required him to turn off the machine before troubleshooting. Moreover, Plaintiff fully understood the risks of his actions. He instructed employees to steer clear of the restricted area because of the risk of harm. He even admitted in his deposition that he knew that standing on the carousel presented a risk of falling, which was the precise result of his actions. Despite knowing the associated risks, Plaintiff *intended* that the operation of the machine in Bay 26 continue while he inspected it before maintenance arrived.

Thus, notwithstanding any alleged defective design, Plaintiff assumed the risks of his actions in bypassing every existing safety precaution and not complying with company procedures to voluntarily engage in conduct that he admittedly knew could result in his injury. This finding supports the district court's grant of summary judgment.

## C.    Workplace Intentional Tort Claim

An employer may be liable for an intentional tort under Ohio law when "the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." Ohio Rev. Code § 2745.01(A). "'[S]ubstantial certainty' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." *Id.* § 2745.01(B). Notwithstanding, there is a rebuttable presumption of employer intent upon a showing of the "deliberate removal . . . of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance . . . if an injury or an occupational disease or condition occurs as a direct result." *Id.* § 274501(C).

Since the briefing in this case, the Ohio Supreme Court has clarified the law in this area to Plaintiff's disadvantage. In order to receive the benefit of the rebuttable presumption that an

14

employer acted with deliberate intent to cause the plaintiff's injury, a plaintiff must establish that the employer made a "deliberate decision to lift, push aside, take off, or otherwise eliminate [a] guard from the machine." *Hewitt v. L.E. Myers Co.*, 981 N.E.2d 795, 802 (Ohio 2012). "[A]n employer's failure to train or instruct an employee on a safety procedure does not constitute the deliberate removal of an equipment safety guard." *Id*. at 801. In the absence of deliberate removal, a plaintiff must establish that the employer acted with *specific intent* to injure him. *Houdek v. ThyssenKrupp Materials N.A., Inc.*, No. 2011-1076, ---N.E.2d ---, 2012 WL 6553603, at *6 (Ohio Dec. 6, 2012).

The *Houdek* court rejected the argument that the intent inquiry was an objective one satisfied by an employer's mere knowledge of a hazardous condition. *See id.* An injury resulting from such negligence would typically be covered by worker's compensation, which Plaintiff has already received. *See Zuniga v. Norplas Indus. Inc.*, 974 N.E.2d 1252, 1256 (Ohio Ct. App. 2012) (stating that a workers' compensation claim is the exclusive remedy for workplace injuries, except for those that go "beyond mere negligence or even wanton behavior"). Indeed, the *Houdek* court found that evidence of a defendant employer's extremely deficient safety procedures was insufficient to establish a deliberate intent to injure. The court stated:

> [A]t most, the evidence show[ed] that th[e] accident may have been avoided had certain precautions been taken. However, because this evidence [did] not show that [the defendant] deliberately intended to injure [the plaintiff], pursuant to [Ohio Rev. Code §] 2745.01, [the defendant] is not liable for damages resulting from an intentional tort.

*Id.*

Plaintiff in the case at bar admits that "there is no evidence of a deliberate, subjective intent by IAC management to injure Plaintiff, nor an express order that a safety mechanism be bypassed

15

or safety policy not followed." (Pl.'s Br. 14–15.) Moreover, Plaintiff failed to make any showing that IAC deliberately removed a safety feature from the machine prior to his accident. Indeed, all of the safety features that were in place before Plaintiff's accident were in place at the time of his accident. The argument that IAC failed to enforce its own safety procedure not only runs contrary to Plaintiff's own testimony about his enforcement role as supervisor, but it also has no bearing on this analysis. *See Hewitt*, 981 N.E.2d at 801.

Consequently, the district court properly granted summary judgment to IAC on this claim.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court granting summary judgment to Defendants Deltamatic and IAC.