PRUITT et al., Appellants,

v.

GENERAL MOTORS CORPORATION, Appellee, et al.

[Cite as *Pruitt v. Gen. Motors Corp.* (1991), 74 Ohio App.3d 520.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–1261.

Decided June 11, 1991.

*Lyman Brownfield,* for appellants.

*Vorys, Sater, Seymour & Pease, Gerald P. Ferguson* and *Algenon L. Marbley,* for appellee General Motors Corporation.

PEGGY BRYANT, Judge.

Plaintiffs-appellants, Robert H. Pruitt and his wife, Mabel B. Pruitt, appeal from a judgment of the Franklin County Court of Common Pleas directing a verdict in favor of defendant-appellee, General Motors Corporation ("GMC").

According to plaintiffs' evidence at trial, plaintiff Robert H. Pruitt ("plaintiff") was employed with Union Oil of California ("UNOCAL") as an over-the-road tractor trailer driver, operating a Five Star General semi-tractor owned by UNOCAL and manufactured by GMC. On April 18, 1985, between 3:00 and 3:30 p.m., plaintiff reported for work, and, following return of his rig from Gelco Corporation ("Gelco") where it was being serviced, plaintiff began a routine inspection of the rig.

Plaintiff's inspection required lifting the sizable vehicle hood by disengaging the hood catches on either side of the hood, stepping up into footholds on the front bumper, grasping hood slots, and slowly guiding the hood up and back toward the operator. During prior inspections, the hood pivoted forward on hinges above the front bumper to a nearly vertical position but was prevented from falling further by two steel cables which ran between the inside of the hood and the fire wall on either side of the engine compartment. The restraining cables were each connected to a clevis secured by a retaining pin which was held in place by a cotter pin inserted through a hole at the end of the retaining pin.

Although plaintiff had safely opened this particular hood hundreds of times, on April 18, 1985, as he lifted the hood for routine inspection, the hood continued to fall toward him, hitting plaintiff on the side of the head and causing serious personal injuries. The hood was so heavy that three employees were required to lift it after this incident.

Neither party disputes that the repairs Gelco performed immediately prior to the accident required the safety cables to be disengaged and the hood to be removed. For the purposes of this appeal, the evidence indicates that Gelco's failure to properly reattach the safety cables was the reason the hood continued to fall; and that the described cable mechanism was the only built-in means of restraining the hood.

As a result of the accident, plaintiffs filed an action against Gelco and GMC, alleging negligence, strict liability and breach of implied warranty. Prior to trial, plaintiffs settled their claim with Gelco and proceeded to trial against GMC on a theory of strict liability for defective design and failure to warn. The trial court granted GMC's motion for directed verdict at the close of plaintiffs' case, and plaintiffs appeal therefrom.

Although plaintiffs have failed to set out a statement of the assignments of error presented for review as required by App.R. 16(A)(2), plaintiffs' argument resolves to the following assignment of error:

"The trial court erred in directing a verdict for defendant at the close of the plaintiffs' case."

A motion for directed verdict under Civ.R. 50(A) does not present factual issues, but a question of law. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935. The trial court, without weighing the evidence, must construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds could come to but one conclusion on the evidence submitted, that conclusion being adverse to such party. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. Thus, the trial court must submit an essential issue to the jury when sufficient evidence relating to that issue permits reasonable minds to reach different conclusions. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph four of the syllabus.

A strict liability claim predicated on design defect has three basic elements:

" ' * * * (1) there was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendants; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss.' " *State Farm Fire & Cas. Co. v.*

*Chrysler Corp.* (1988), 37 Ohio St.3d 1, 6, 523 N.E.2d 489, 493; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267 (quoting *State Auto Mut. Ins. Co. v. Chrysler Corp.* [1973], 36 Ohio St.2d 151, 65 O.O.2d 374, 304 N.E.2d 891, paragraph four of the syllabus).

Plaintiffs must produce sufficient evidence on each of these three elements to withstand GMC's motion for directed verdict.

With regard to the first element of plaintiffs' prima facie case, the Ohio Supreme Court has developed the following test to determine whether a design is defective under strict liability law:

" * * * [A] product design is in a defective condition to the user or consumer if (1) it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if the benefits of the challenged design do not outweigh the risk inherent in such design. * * * " *Knitz v. Minster Machine Co.* (1982), 69 Ohio St.2d 460, 466, 23 O.O.3d 403, 406–407, 432 N.E.2d 814, 818.

The trial court never expressly applied either of the tests for design defect articulated in *Knitz*, finding instead that Gelco's disengaging the safety mechanism amounted to a "substantial change" in the product design, rendering an otherwise safe product defective; and that Gelco's actions were the superseding cause of the harm plaintiff suffered.

Plaintiffs, however, contend that the defect in the detachable cable design is its inherent failure to account for foreseeable human error. Testimony established that it was necessary to disengage the hood restraints and completely remove the hood of the rig in order to perform major engine repairs; and that apart from the hood restraints, no other built-in means existed to prevent the hood from falling. Under plaintiffs' theory, the defect inherent in the detachable cable safety mechanism is the possibility that when the hood is replaced the cables will be left disengaged. Since these cables are not visible when the hood is closed, subsequent users, such as plaintiff herein, are exposed to a hidden danger.

We agree with plaintiffs' contention that Gelco's failure to reattach the cables was not a "substantial change" in the product, since removal of the cables to facilitate major engine repairs was contemplated by the manufacturer's design. See *Briney v. Sears, Roebuck & Co.* (C.A.6, 1986), 782 F.2d 585. Similarly, Gelco's failure to reattach the cable system was not a superseding cause of the harm, since the possibility that someone would fail to reattach the cables arguably is foreseeable in view of the product design. See *R.H. Macy & Co. v. Otis Elevator Co.* (1990), 51 Ohio St.3d 108, 554 N.E.2d 1313, at syllabus; see, also, Restatement of the Law 2nd, Torts (1965), Section 447.

Unlike *Temple, supra,* the product herein was not reconfigured in such a way after it left the hands of defendant manufacturer so as to create a risk defendant did not contemplate.

█ Nevertheless, even if we fully accept plaintiffs' theory of defect, plaintiffs still bear the burden of producing sufficient evidence that the removable design is more dangerous than the ordinary consumer would expect when used in an intended and reasonably foreseeable manner, or that the risk inherent in the removable design outweighs the benefit of that design.

█ The consumer expectation test is designed to reflect the commercial reality that implicit in a product's presence on the market is a representation that the product will safely do the jobs for which it was built. *Knitz, supra.* The test utilizes an objective standard, not the subjective expectations of a particular user or consumer. *Leichtamer v. American Motors Corp.* (1981), 67 Ohio St.2d 456, 467, 21 O.O.3d 285, 292, 424 N.E.2d 568, 577. Recent cases and commentaries have suggested that the consumer expectation test fails to provide an adequate legal standard in design defect cases involving nonconsumer products, since the consumer would not know what to expect, not knowing how safe the product could be made, *Birchfield v. Internl. Harvester Co.* (C.A.6, 1984), 726 F.2d 1131, 1136; 8 Beasley, American Law of Products Liability (3 Ed.1987) 40–41; Keeton, The Meaning Principles (Fall 1980), 45 Mo.L.Rev. 579. However, even if the test be applied herein, the product as designed is not dangerous to an extent beyond that which would be contemplated by the ordinary consumer who uses it with the ordinary knowledge of its characteristics common to the community. *Beasley, supra,* Section 28:23, at 37.

Specifically, the record contains evidence that users of semi-tractors, such as the Five Star General, expect a hood design that permits easy access to the engine compartment, yet provides some safety feature to prevent the hood from falling; that the user expects and perhaps demands that the safety feature allows for the removal of the hood to facilitate major engine repairs. The fully engaged hood retention system on the Five Star General met these expectations, since it provided the necessary access while successfully preventing the hood from falling. However, the record before us does not support that conclusion that the ordinary consumer would expect or even contemplate a hood retention system that also fully accounted for the possibility of error on the part of experienced auto mechanics. The mere occurrence of this unexpected accident does not satisfy the consumer expectation test. *State Farm, supra,* 37 Ohio St.3d at 7–8, 523 N.E.2d at 494–496. In short, plaintiffs have failed to prove that the design of the hood retention system was defective under the consumer expectation test.

The second alternate definition for design defect under *Knitz, supra,* is whether the risk inherent in the design of the hood outweighs its benefits. Although not meant to be an exclusive list, factors relevant to the determination are the likelihood that the product design will cause injury, the gravity of the danger posed, and the mechanical and economic feasibility of an improved design. *Id.,* 69 Ohio St.2d at 466, 23 O.O.3d at 406–407, 432 N.E.2d at 818.

Plaintiffs rely on the testimony of their product safety expert, John Schroering, to establish design defect. For the most part, Schroering's testimony contains conclusory allegations of a design defect, providing little insight into the risk/benefit analysis. Although Schroering identified the hazard inherent in the removable design as its "dependency on human nature," no testimony supports the likelihood of such error. In fact, the evidence indicates that the hood restraining system need only be removed during major engine repairs, not for normal maintenance or routine repairs, thus suggesting that the chance that a user will encounter the danger is more remote than plaintiffs contend. Further, various testimony in the record indicates that major engine repairs on a semi-tractor as large as the Five Star General are customarily performed by experienced truck mechanics, again suggesting that the likelihood of human error is more remote.

Significantly, plaintiffs' expert failed to suggest any safer alternative designs or discuss the mechanical and economic feasibility of improving the hood restraining system of the Five Star General. While Schroering stated that a hydraulic backup system was a "possibility," he did not provide any relevant detail; and while Schroering claimed that defendant had implemented alternate designs in other models, he failed to elaborate thereon. In short, plaintiffs failed to make a prima facie showing that the risk inherent in the design of the hood restraining system outweighed its benefit.

In the final analysis, the trial court properly directed a verdict in favor of defendants on plaintiffs' design defect claim since plaintiffs failed to prove that a defect existed under either the consumer expectation test or the risk/benefit test.

Similarly, the trial court properly directed a verdict in favor of GMC on plaintiffs' failure-to-warn claim. In *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 556 N.E.2d 1177, the Supreme Court stated:

" * * * In a products liability case where a claimant seeks recovery for failure to warn or warn adequately, it must be proven that the manufacturer knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn. [Footnote omitted.] Further, there will be no liability unless it be shown that the manufacturer failed to take the

precautions that a reasonable person would take in presenting the product to the public. Thus, the standard imposed upon the defendant in a strict liability claim grounded upon an inadequate warning is the same as that imposed in a negligence claim based upon inadequate warning. * * *" *Id.* at 257, 556 N.E.2d at 1182–1183.

Plaintiffs' expert expressed no opinion on the lack of a product warning; and plaintiffs presented no evidence upon which a reasonable jury could find a duty to warn within the meaning of *Crislip.*

Plaintiffs additionally argue that the trial court improperly considered evidence outside the record in granting GMC's directed verdict. Specifically, plaintiffs submit that the trial court committed prejudicial error by comparing plaintiffs' allegation of design defect to the lug nuts on a wheel or to hydraulic automobile brakes. We disagree. Although the trial court did draw the analogy to these common automotive functions for the purpose of explaining its ruling, these analogies were not facts upon which the trial court's decision rested. Moreover, even if the trial court erred by relying on extraneous facts in reaching its decision, the error was harmless in light of our decision herein not relying on the trial court's "substantial change" analysis, but nonetheless affirming the trial court's decision for plaintiffs' failure to provide the court with sufficient evidence on the essential issues of their case.

Accordingly, plaintiffs' assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCormac and Hooper, JJ., concur.

James J. Hooper, J., retired, of the Miami County Court of Common Pleas, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.