NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0324n.06

Case No. 14-3962

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 04, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| THOMAS W. BUTTS, JR.; HOLLY BUTTS; THOMAS AND HOLLY BUTTS, minor by and through her next friends, lawful parents and natural guardians, obo Kaitlyn Butts; THOMAS AND HOLLY BUTTS, minor by through her next friends, lawful parents and natural guardians, obo Carly Butts; THOMAS AND HOLLY BUTTS, minor by through her next friends, lawful parents and natural guardians, obo Kaylee Butts, | ) ) ) ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| OMG, INC.; OMG ROOFING, INC.; ALBION ENGINEERING COMPANY; ELASTOMERIC ROOFING SYSTEMS, INC., | ) ) ) ) ) | |
| Defendants-Appellees. | ) | |

BEFORE: GUY, COOK, and McKEAGUE, Circuit Judges.

McKEAGUE, Circuit Judge. Thomas Butts, an experienced roofer, lost two fingers while replacing an adhesive cartridge in an industrial caulking gun. Even though this type of injury never happened before, Butts sued the retailer and manufacturers, claiming that they defectively designed the product and failed to warn about its potential dangerousness. His wife

and children brought derivative claims for loss of consortium. The district court granted summary judgment to the defendants, concluding that Butts's injuries resulted from an unforeseeable risk of using the product. We agree and thus affirm.

The defendants in this action are the manufacturers and retailers of an industrial caulking gun unit. One defendant, Elastomeric Roofing Systems, manufactures the industrial-strength adhesive (known as OlyBond 500) exclusively for another defendant, OMG, Inc. and OMG Roofing, Inc. (together, OMG). OMG then sells OlyBond as a "private label" product. A third defendant, Albion Engineering Company, manufactures the caulking gun designed to dispense OlyBond. The caulking gun is known as the SpotShot Manual Stand-Up Applicator.

Together, the unit is used to fasten insulation board to roofing substrates. To do so, two inert chemical components in OlyBond react to form an adhesive when combined at a one-to-one ratio. So each OlyBond cartridge has two adjoining cylinders, one for each chemical. When the user squeezes the SpotShot's trigger, it slowly propels a horizontal, metal transfer bar connected to two pistons, one for each cylinder. The pistons move at an even rate and press the two chemicals into a mixing nozzle. The fully formed adhesive exits through the nozzle's mouth. After emptying a cartridge, the user presses a release button behind the caulking gun's trigger and unlocks a metal plunger connected to the transfer bar. (The interested reader can view this process on YouTube, at https://www.youtube.com/watch?v=ecJ0U_OdNy4.)

Butts suffered his injury while using one of these units during a roofing job. The accident occurred around noon on a sunny, eighty- to ninety-degree day in June 2010. After expelling roughly half the contents of a cartridge, Butts ran out of insulation board. Before he stepped away to retrieve more insulation board, Butts worried about the mixed adhesive dripping on the roof while he was absent. So he depressed the release button, pulled the plunger back

about an inch, and left the SpotShot in the shade with the nozzle leaning upward at an angle somewhere between forty-five and ninety degrees.

After a couple minutes Butts returned with more insulation board. He picked up the SpotShot, pressed the plunger so the pistons would return to the backs of the cylinders, and squeezed the trigger—but to no avail. Knowing that the adhesive occasionally hardened inside the nozzle, clogging the device and requiring a replacement cartridge and nozzle, Butts says he pressed the release button so he could pull back the plunger and remove the cartridge. But the moment he pressed the release with his right hand, he says the transfer bar shot backward, crushing two of his left-hand fingers between it and the metal frame. Butts and his coworkers described the sound like a pistol or shotgun firing. After several months and five unsuccessful surgeries, he lost his middle finger below the knuckle and the tip of his ring finger.

Butts filed suit, alleging that the defendants defectively designed, manufactured, and labeled the SpotShot system. He eventually abandoned his manufacturing defect claim. After the close of discovery, the defendants moved to exclude Butts's experts and for summary judgment on the remaining claims (design defect and inadequate warning). The court granted summary judgment to the defendants on both claims and denied the motions in limine as moot. It held that Butts could not make out his case even with expert opinions because Butts could not show a foreseeability of harm. Butts timely appealed.

We give "fresh review to the district court's summary-judgment decision and draw[] reasonable inferences in the [plaintiffs'] favor." *EEOC v. Ford Motor Co.*, No. 12-2484, 2015 WL 1600305, at *4 (6th Cir. Apr. 10, 2015) (en banc). We will uphold the grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To prevail on his design-defect claim, Butts must establish three elements—three material issues—by a preponderance of the evidence: (1) the product was defective; (2) the defect existed when the product left the defendants' control; and (3) the defect directly and proximately caused his injury. *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 523 N.E.2d 489, 493 (Ohio 1988). The parties contest whether a genuine dispute exists as to the first and third elements. Such a dispute exists only when "the plaintiff presents significant probative evidence on which a reasonable jury could return a verdict" for him. *Ford Motor Company*, 2015 WL 1600305, at *4 (internal quotation marks omitted).

To prove the first element—that the product was defective—Butts must prove that "the foreseeable risks associated with its design . . . exceeded the benefits associated with that design." Ohio Rev. Code § 2307.75(A). Foreseeable risk has two components. First, the risk must be "associated with an intended or reasonably foreseeable use, modification, or alteration of a product in question." § 2307.71(A)(6)(a). Second, it must be one "that the manufacturer in question should recognize while exercising . . . [t]he attention, perception, memory, knowledge, and intelligence that a reasonable manufacturer should possess" as well as "[a]ny superior attention, perception, memory, knowledge, or intelligence that the manufacturer in question possesses." § 2307.71(A)(6)(b). The Ohio design-defect statute lists five nonexclusive factors to ascertain foreseeable risk:

> (1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;
>
> (2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;
>
> (3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer;

(5) The extent to which that design or formulation is more dangerous than a re[a]sonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

§ 2307.75(B).

When both foreseeable risks and benefits of a product exist, the balancing of the two is best done by a jury. *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.*, 668 N.E.2d 529, 533–34 (Ohio Ct. App. 1995). But if the plaintiff's injury results from a risk that was in no way foreseeable (as defined above), then summary judgment is proper. *Id.*; *see Zettle v. Handy Mfg. Co.*, 998 F.2d 358, 360–62 (6th Cir. 1993). The district court held that Butts failed to show that the risk of a blowback that could cause this type of injury was at all foreseeable. We agree.

To attempt to make out his claim, Butts hired two experts: Rickey Stansifer and Rob Evans. Both set out to confirm Butts's theory—that the product was defectively designed. To do so, the experts' tests needed to show excessive pressure in the unit that could foreseeably cause blowback under normal-use conditions. *See* Ohio Rev. Code §§ 2307.75(A)(6), (B)(3). But neither set of tests did. Stansifer tested the product under normal-use conditions but found only a "slight tink and practically no movement"—nothing like a blowback. *E.g.*, R. 69 (Stansifer Dep.) at 16, 18–19. (That's also what the defendants' expert found: He never observed the transfer bar move backward more than an eighth of an inch. *See* R. 55-7 (Shadwell Dep.) at 17, 24–25, 66, 97.) And Evans did not even *attempt* to show blowback under normal-use conditions, readily admitting that none of his testing mimicked the actions Butts took. R. 72 (Evans Dep.) at 123. All of Evans' tests were instead done under extreme conditions, which are not considered for design-defect claims. *See* Ohio Rev. Code § 2307.71(A)(6) (foreseeable risk

includes only the risks associated with the "intended and reasonably foreseeable uses" of the product).

As the district court held, the tests thus have the opposite effect that Butts intended. They show not a foreseeable risk of harm, but rather that (1) the material that "flowed back" from the applicator isn't enough to cause a blowback (or even excessive pressure) under normal-use conditions; and (2) that even when *consciously* trying to create a blowback, such an event is not foreseeable when the unit is used as Butts used it. None of the tests, in any event, produced enough force to show that blowback could foreseeably lead to the user losing his fingers. Neither set of tests, therefore, create a genuine dispute of fact.

The tests, to be sure, established that there could be pressure build-up in the canisters when used under normal conditions, and that is what Butts emphasizes throughout his briefing. But he's missing a link, for pressure, by itself, does not create any foreseeable risk of harm. Two reasons show why. *First*, the unit had to have *some* pressure build-up to work properly, which generally occurs when you pull the trigger and use mechanic force to expel the materials from the tubes. And there is no design defect when the risk of harm comes only from "a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability." Ohio Rev. Code § 2307.75(E); *see id.* § 2307.75(F); *Vermett v. Fred Christen & Sons Co.*, 741 N.E.2d 954, 969 (Ohio Ct. App. 2000). *Second*, while the chemical reaction of the agents can undoubtedly create additional pressure if mixed in the nozzle or in the canisters if there is backflow, the experts' tests themselves show that any evidence of pressure build-up does not create a genuine dispute of fact as to the foreseeability of having that pressure lead to a blowback, much less a blowback severe enough to cause someone to lose his fingers.

For a similar reason, these experts' stated opinions—that, for example, "the injury was caused by a sudden release of energy," R. 53-4 (Stansifer Report) at 4—do not create a genuine issue of material fact: They are based solely on the fact that the accident happened, not on their actual experiments. Stansifer, for example, testified that he believed the pressure could cause a blowback "[b]ecause [Butts is] telling us that's what happened to him"; and he admitted that his opinion is <u>not based on science</u>. R. 69 at 63 (emphasis added).

Nor, finally, does the fact that Butts was injured while using the product create a genuine dispute of fact. *Pruitt v. General Motors Corp.*, 599 N.E.2d 723, 726 (Ohio Ct. App. 1991); *see Sutowski v. Eli Lilly & Co.*, 696 N.E.2d 187, 190 (Ohio 1998). Indeed, this type of evidence exists in *every* products-liability action. Plus, considering Butts's injury here hurts his case: This type of injury never happened before, and has not happened since.

The evidence Butts produced "amounts to no more than a mere scintilla," and thus does not present a jury question on the foreseeability of harm. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011). We conclude, therefore, that no reasonable jury could find a foreseeable risk of harm under the "intended and reasonably foreseeable uses" of the product, Ohio Rev. Code §§ 2307.71(A)(6), 2307.75(B)(3), making summary judgment proper for the Ohio design-defect claims.

It follows from that conclusion that Butts's warning-defect claim fails as a matter of law as well. Under Ohio law, "a product is defective due to inadequate warning" if the manufacturer failed to provide a warning when it "knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm." Ohio Rev. Code § 2307.76(A)(1). The district court granted summary judgment to the defendants on Butts's warning-defect claim on the same grounds as the design-defect claim: the risk of a

blowback was unforeseeable.  As we hold above, we agree, and so we also affirm summary judgment on the warning-defect claim.

We need not consider the district court's alternative holdings to reach the same result. Because the risk of harm was unforeseeable as a matter of law, we affirm.

COOK, Circuit Judge, dissenting. Unquestionably, this is a close case. Unquestionably, Butts lost the use of two fingers, affecting his livelihood as a roofer. And unquestionably, Butts lost those fingers using the SpotShot in a reasonably foreseeable manner. That afternoon, his fellow roofers pried his damaged fingers from the gun after they heard what sounded like a gun shot. With no genuine dispute that the SpotShot injured Butts, the district court ought to have subjected the science and methods underpinning his experts' opinions to the rigors of a *Daubert* hearing. Neither Federal Rule of Evidence 702 nor Ohio's design-defect statute requires experts to recreate the plaintiff's injury in order to opine about its causes or foreseeability. Thus, I respectfully dissent.